## CLARK V. HERSHY.

1. SUPREME COURT: *Opinion on question not presented.*

   The rule that a question decided by the Supreme Court is not open to reconsideration in the same case, on a second appeal, does not apply to expressions of opinion in the first decision, on a question not then before the court.

2. WILLS: *Election to take under.*

   Where an interest in land is devised to one who claims it adversely, her election to take under the will will not be implied from facts occurring before she has any knowledge of her title to the property.

3. SAME: *Same.*

   Nor will the devisee's long delay in making inquiry about her rights, and in taking steps to enforce them, in connection with acts tending to show such election, be sufficient to establish it by implication, where the acts relied upon were done in ignorance of her title, and the delay occurred while the civil war was flagrant, the courts closed, business suspended, and her husband a refugee.

4. SAME: *Same.*

   Nor will such election be implied from the fact that the devisee's husband brought a suit for trespass on the land devised, in her name jointly with his, and that he had paid taxes on the land, when neither of these things was done with her knowledge or consent, and it is shown that the taxes were paid as the agent of a third person.

5. TRUST: *Under voluntary conveyance.*

   The grantee of land will be held to have taken it in trust where it was conveyed to him for the nominal consideration of one dollar on account of the failing health of the grantor, and it is shown that the latter, and after his death, his widow and heir, remained in possession of the premises, making improvements and receiving the rents.

6. PLEADING AND PRACTICE: *Matters of record: Exceptions.*

On a bill seeking a partition of lands, and an account of the rents thereof, where the facts upon which the several interests of the parties depend appear on the face of the pleadings and are undisputed, no report from a master is necessary to bring them before the court; and no exceptions to such report is necessary in order to present the questions of law arising upon the facts.

7. INTEREST: *When not allowed.*

The plaintiff brought an action for the partition of lands which she and the defendants had long treated as belonging exclusively to the latter, and part of which had been sold by one of the defendants, and the proceeds used with the tacit consent of the plaintiff. All the parties having acted under the impression that the plaintiff had no interest in the property until just before the suit was commenced, no share in the rents and profits, or in the proceeds of sales, was paid to or demanded by her. HELD: That under the circumstances of the case no interest ought to be allowed to the plaintiff on the sums due to her out of such rents, etc., except from the commencement of her suit.

8. LIEN: *On partition of lands, etc.*

In such action on rendering judgment for the plaintiff, it is error to decree a lien in her favor on the defendant's shares in the unsold lands, to secure the payment of rents and profits.

APPEAL from *Sebastian* Circuit Court in Chancery.

R. B. RUTHERFORD, Judge.

*Compton & Compton,* for appellants.

1.  The appellee elected to take, and did take under the will of Aaron, and thereby lost any right she had as heir. *17 Pick., 303; 77 Pa. St., 160; 84 id., 402; 54 Cal., 207; 63 Ill., 285.* The question of election was not in issue, nor decided, in the former case.

2.  The court erred as to the interest in the lands which appellee was entitled to under our statute of descents—making the calculations to verify the proposition.

3.  The allowance of interest on the claim of appellee was erroneous. *20 Ark., 410.* The claim was not liquidated, but was doubtful and disputed, and in such cases interest is not allowed.

4.  Instead of being entitled to 11-48ths of lands unsold in Johnson, Perry, Sebastian and Pope Counties, appellee is entitled only to 1-8th of lands in Johnson and Perry, and 1-6th

only of one class of lands in Sebastian and Pope, and to 11-48ths in the other class, and this error exists in the money decree, issues and profits.

5. The master seems to have stated no account as to Abram C. Miller, and the decree against him is not supported by the evidence.

6. It was error to decree a lien on the interests of appellants, and in directing a sale to pay the money decree. *21 Pick., 559; 42 N. Y., 549; 4 Johns. Chy., 521; 2 Curtis, C. C., 427.* Nor was there any lien for owelty, because no partition had been made, and even if there had been, there was no express agreement between the parties to that effect, or for any other purpose. *32 Md., 57.* Besides, nearly all the *rents* decreed against Sarah Clark, arose from her own occupancy of the homestead, which was not sold.

7. By an unreasonable lapse of time, the demand of appellee is stale. *14 Ark., 62; 19 id., 16; Wood on Lim., 121.*

8. But aside from laches or staleness, the bill should be dismissed for the long acquiescence of the appellee as to the title of the property, and the use and disposition of it. *Wood on Lim., 125, 126.* If appellee was mistaken as to the legal effect of the conveyance between Abram and Aaron, and of the joint will of Nancy and Sarah, this can make no difference. Estoppel arises notwithstanding a mistake of law, even in cases of mistake or ignorance of fact after long lapse of time, especially in connection with change of situation, as in this case. *6 Mo. App., 323; 57 Mo., 384; 49 id., 98; 91 Ill., 251; 39 Mich., 270; 16 Wend., 285; 10 id., 104; 25 Cal., 619; 48 id., 395.* She was bound, notwithstanding her coverture, by the *estoppel. 10 C. E. Green (N. J.), 194; 69 Ill., 174; ib., 452; 3 Bush., 702; 14 Bush., 490; 14 B. Mon., 638; 40 Mich., 29; 56 Miss., 318; 57 N. H., 482; 26 Ohio St., 535; 2 Drewry, 363; L. R., 4 Ch. App., 591.*

*U. M. & G. B. Rose,* for appellee.

1.   The facts in this case do not show that Mrs. Hershy ever elected to take under the will of Aaron and Nancy Clark. She cannot be bound by the unauthorized acts of her husband. The will of Nancy Clark was adjudged void.   No such issue as that of election was before the court, and the application to inject it in this case was properly refused.   *38 Ark., 599.*

This was not a case where appellee could be put to an election.   *1 Pom. Eq. Jur., sec. 473; 15 N. Y., 366.*   Elections are only binding when made with full knowledge of the facts and of the parties' rights.   *1 Pom. Eq. Jur., sec. 512; 4 Desau's Eq., 274; 29 N. J. Eq., 54; 42 Ga., 521; 30 Iowa, 465.*

2.   Appellee not barred by laches.   A married woman can sue at any time during coverture, or within three years thereafter.   *42 Ark., 305; 44 id., 398.*   But this is *res adjudicata.* It was decided on former appeal that appellee was entitled to maintain the suit, and though erroneous, it is still the law of the case.   *5 Ark., 200; 14 id., 304; ib., 515; 29 id., 174.*

3.   Nor was appellee estopped by long aquiescence.   The first requisite of estoppel is, injury to the party setting up the estoppel; estoppels do not grow out of mere acquiescence, but of improper silence, resulting in prejudice to another. Mrs. Clark was not misled, nor injured.   *11 Ark., 249; 36 id., 114; 15 id., 55; 17 id., 221; 39 id., 131.*

4.   The question of the interests of the parties in the lands was submitted to a master; he reported upon it, and no exceptions were taken to his report.   Exceptions must be made in the trial court.   They cannot be made here for the first time. *108 U. S., 72; 18 How., 510; 13 Pet., 368.*

5.   Six per cent. interest properly allowed since July 13, 1868.   See *Gantt's Dig., sec. 4277.*   The receipt by defendant of money belonging to plaintiffs raised an implied contract, and makes a case within the statute.   *8 Ark., 202; 25 id., 100; ib., 134; 27 id., 365.*   The right to interest before that time is equally plain.   *Gould's Dig., ch. 92, sec. 1.*

6, A tenant in common, who receives more than his share of the joint property, is liable to suit for money had and received. *7 Pick., 132; 2 Gray, 424.*

7. No exception was filed to the allowance of interest by the master. It is too late now. See *supra.*

8. In suits for partition and account, the person in whose favor the balance is declared has a right to have that balance declared a lien on the interest of his co-tenant. *11 N. J. Eq., 276; 49 Ill., 78; 11 Gill. & J., 98; Freeman on Cot. and Part., sec. 512.*

SMOOTE, Sp. J. This is the second time this case has been before this court. See, *Hershey v. Clark, 35 Ark., p. 17.*

Abram and Aaron Clark were brothers. They owned, as tenants in common and in equal shares, certain real and personal property. Besides this, neither of them, during their joint lives, seems to have owned any other property. The real estate owned by them was, and is, situated in the Counties of Sebastian, Pope, Johnson, Perry and Yell.

The two brothers, during their lives, and on the 11th day of May, 1850, mutually agreed, in writing, that the survivor should take and become the sole owner of the whole of the property, real and personal, and hold the same as his own absolutely. Afterwards, and on the 17th day of May, 1851, Abram Clark died, without having made any other testamentary disposition of his property than that contained in the said written agreement between the brothers. He died unmarried and without issue of his body, leaving him surviving, his mother, Nancy Clark; his brother, Aaron Clark, and his sisters, Sarah Clark, Susan Clark, Elizabeth Miller, and Ann E. Hershey, his only heirs-at-law and distributees.

Upon the death of Abram, Aaron took possession of all the property as his own, and Nancy, the mother, by her deed of the 8th of December, 1851, conveyed her entire interest therein to him, and he held possession of all of the property, claiming it as his own until his death.

Susan died during the lifetime of Aaron, in 1851, unmarried, without issue and intestate, leaving her surviving the said Nancy, her mother, and the said Aaron, Sarah, Elizabeth and Ann E., her brother and sisters, her only heirs-at-law and distributees.

Aaron died on the 14th day of November, 1855, unmarried and without issue, after making and publishing his last will, which was duly probated. By this will he bequeathed all of his personal property, and devised all of his lands lying in Sebastain and Pope Counties, to his mother Nancy and his sister Sarah, to hold in common; to his sister Elizabeth he devised all his lands lying in Johnson and Perry Counties, and to his sister Ann E., he devised all his lands lying in Yell County, and any other lands undisposed of by the will. Aaron, during his lifetime, acquired lands other than those owned by himself and his brother Aaron in common.

All of the legatees and devisees under the will of Aaron (except perhaps Ann E., about whom as to this, there is a question in the record), seem to have accepted under the will, and entered upon the enjoyment of the property therein bequeathed and devised to them, and remained in undisputed possession thereof until about the time this suit was instituted, except Elizabeth Miller, who so remained in possession until she died in 1867, leaving her surviving Abram C. Miller, her only heir-at-law and distributee, who has been in possession since her death.

The mother, Nancy, died, on the 27th of November, 1861, after making jointly with Sarah what purported to be her last will, the contents of which it is unnecessary to notice here She left surviving her, her said daughters Sarah, Elizabeth and Ann E., her only heirs and distributees.

Ann E., instituted this suit in October, 1870, the principal defendants being Sarah Clark, and Abram C. Miller, the son of said Elizabeth Miller, deceased. The only other defendants are S. F. Clark, as executor of the will of Aaron Clark,

and her husband, B. F. Hershey, as administrator of the estate of Nancy Clark, who are little more than nominal defendants. The object of the suit is to have partition and an account of rents, profits and the proceeds of the sales of such of the lands as had been sold, and of certain personal property, and the like, as part of the estate and property hereinbefore mentioned, and to have her interest therein ascertained and enforced.

Sarah Clark and Abram C. Miller answered, relying principally on the written agreement made by the brothers in their lifetime, the deed of her interest by Nancy, the mother, to Aaron, his will, and the joint will of Nancy and Sarah, in support of their rights to the property; they also interposed the statute of limitations, and made their answer a cross-complaint.

At the hearing in the Circuit Court the Chancellor dismissed the bill for want of equity, and Ann E. Hershey appealed to this court.

Upon consideration here, this court reversed the decree of the Chancellor below, and sent the cause back to the Circuit Court, holding that the written agreement between the brothers and the joint will of Sarah and Nancy were void, but sustaining the will of Aaron, so far as it could legally operate upon the property therein bequeathed and devised, and also the sale of her interest by Nancy to Aaron; and saying that Ann E. "is not barred by the statute of limitations. She is entitled under our statutes of descents and distribution, to a share of the real estate of which her brother Abram died possessed; also to her proper share of the real and personal property of her sister Susan and her mother. She is entitled to an account, to be taken under the direction of the court, to ascertain these interests. She must elect, however, which her bill virtually does, to disclaim all rights to the property in question acquired directly to herself through the will of her brother Aaron. The will disposes of interest which she claims adversely, and a case for election arises."

Clark v. Hershy.

**1. SUPREME COURT: Opinion on question not presented.**   When the case under this first appeal went back to the Circuit Court, Sarah and Miller filed an amendment to their answer, alleging, among other things, that Ann E., the present appellee, had elected to take under the will of Aaron, and that she was barred by laches and acquiescence.   This amendment to the answer was rejected by the court below when first presented, but afterwards permitted to be filed.   The appellee now insists that the defense above referred to, as contained in the amendment, ought not to be considered, principally upon the ground that it was diposed of and decided by this court on the first appeal.

When a question of law arising in a case has once been decided by this court, it becomes a part of the law of that case, unless reconsidered and repudiated by this court, at the term during which the decision was made; and this, too, without regard as to whether such decision was right or wrong. *Porter v. Doe et al., 10 Ark., 187; Baxter v. Brooks, 29 Ark., 185.*

But this court cannot decide a question which is not before it for decision.   *Phelan v. San Francisco, 9 Cal., 16; Barne et al. v. Winona R. R. Co., 117 U. S., 228.*

Mr. Justice Field, in delivering the opinion of the court in the above cited case of *Barney et al. v. Winona R. R. Co.*, said : "We recognize the rule that what was decided in a case pending before us on appeal is not open to reconsideration in the same case, on a second appeal on similar facts.   The first decision is the law of the case, and must control its disposition; but the rule does not apply to expressions of opinion on matters the disposition of which were not required for the decision."

From an examination of the record upon the first appeal, and the opinion then delivered, we do not think the question of election was before this court; nor do we think that this court in that opinion, in remarking that the present appellee had, by her complaint, virtually elected not to take under the will, intended to cut off investigation as to that, or to prevent

the present appellants from showing that she had elected to take under the will, if, in fact, she had done so.

Under this state of case, we are of opinion that the court below did not exceed its jurisdiction, in allowing the amendment to the answer, and that the question is before us for consideration. This view, it seems to us, is sustained by the authorities above cited, and our own liberal statute of amendment.

We hold, however, that the opinion of this court, in the first appeal, upon the statute of limitations, does cut off the consideration of the question of laches and acquiescence upon the lapse of time, unconnected with other evidence tending to show that appellee had elected to take under the will; that if appellee is estopped at all, it is upon the ground that she had so elected in fact. In passing upon that question, lapse of time may be considered in connection with other facts in evidence upon the point.

2. WILLS: Election to take under.

Did the court below err in finding that appellee had not elected to take under the will? It is true that some of her acts in evidence tend to show that she had made such election. But we are satisfied, from the evidence, that neither she, nor any of the parties in interest, had any knowledge of the fact that she had any right, title or interest in the property, until a short time before the commencement of this suit. She knew of the existence of Aaron's will, and the transactions previous thereto, as hereinbefore stated. But she appears to have been ignorant of the fact that she had any right or title to the property she is sueing for herein whatever. In fact, all the parties seem to have been mutually laboring under this mistake. If this is a mere mistake of law, the appellee cannot, of course, avail herself of it.

Judge Story says : " Indeed, where the party acts upon the misapprehension that he has no title at all in the property, it seems to involve, in some measure, a mistake of fact, that is of the fact of ownership arising from a mistake of law. A

party can hardly be said to part with a right or title of whose existence he is wholly ignorant, and if he does not so intend, a court of equity will, in ordinary cases, relieve him from the legal effect of instruments which surrender such unsuspected title." *1st Story's Equity Jurisprudence, sec. 122.*

And in discussing the doctrine as to mistake, with reference to a mortgage which had been released by the plaintiff in the case, who was seeking relief upon the ground that he was totally ignorant of his title at the time of the release; and who had been relieved by Lord Chancellor Nottingham, Judge Story, among other things, says : " If it [the case] proceeded upon the ground that the plaintiff had no knowledge of his title to the mortgage, and therefore did not intend to release any title to it, the release might well be relieved against as going beyond the intentions of the parties, upon a mutual mistake of the law; and if both parties acted under a mutual misconception of their actual rights, they could not justly be said to have intended what they did." *1st Story's Equity Jurisprudence, sec. 123.*

Again he says : " There may be a solid ground for a distinction between cases where a party acts or agrees in ignorance of any title in him, or upon the supposition of a clear title in another, and cases where there is a doubt or controversy, or litigation between the parties as to their respective rights." *1st Story's Equity Jurisprudence, sec. 130.*

As to the matter under discussion we refer also to the case of *Griffith v. Sebastian County, 49 Ark., 24,* and the authorities therein cited.

In that case, Judge Smith, in delivering the opinion of this court, said (p. 33) : "A fact is not less a fact though it be the offspring of the law ;" and (p. 34) " a court of equity will relieve against a mistake of fact superinduced by a mistake of law."

See, also, *Scribner on Dower, pp. 481 to 492,* where the

subject of election by widows as to dower is discussed. We refer also to *4th Dessau's Equity, 274.*

All the facts tending to show an implied election under the will by the appellee, occurred before she had come to any knowledge of her title, except one. That one is an attempted sale of the lands devised to appellee, which appears from the weight of evidence to have been originally made by her husband, B. F. Hershey, and her name signed to the papers in connection with it by him, without her knowledge; and, the transaction took place after the commencement of this suit. We, therefore, attach no weight to it as tending to prove that she had elected to take under the will.

We are next to consider, whether the lapse of time, in connection with the other facts in evidence, make out an election to take under the will. We would be much disposed to hold that the long delay of the appellee in making inquiry about her rights, and in taking steps to enforce them, would, of itself, probably, and certainly in connection with the other facts tending to show her election to take under the will, establish that election, if it were not for some other circumstances in evidence. Under the facts as they appear, the appellee was not in a condition to enforce her rights by legal coercion until the death of the mother, Nancy, in 1861. From that time until 1865 the civil war was going on, and, for the greater part of the time flagrant in that portion of the State where the property is, and where the parties resided. To a great extent the courts were closed, and business, to some extent, suspended. Considerable numbers of the people residing there had to refugee southward for safety; and among them, as the evidence shows, the husband of appellee. These are facts (except as to the refugeeing of her husband) of which we take judicial notice, as a part of the history of the State. These facts did not, of course, absolutely prevent her directly electing to take or not to take under the will. But when we consider the confused and excited condition of things, we do

<div style="margin-left: auto; width: 20%;">

3. **SAME:**
Same.

</div>

not think that an election to take under the will, can be properly implied from her delay, even in connection with her other acts, as they were done in ignorance of her title to the property herein sued for.

4. SAME:
Same.

There is no sufficient evidence of any direct election of appellee to take under the will. It is not shown that she ever agreed to do so; or that she ever entered upon the lands devised to her, or received any rents and profits from them. It is in evidence that a suit for trespass on the lands devised to appellee, was brought in the names of her husband, B. F. Hershey, and herself; and that B. F. Hershey had paid taxes on the lands. But the weight of evidence is to the effect that both these things were done without her knowledge or consent, and B. F. Hershey testifies that he paid the taxes as the agent of the appellant, Sarah. So, upon the whole case as to that point, we hold that there is not sufficient evidence that appellee elected to take under the will either directly or by implication.

Upon final hearing the court below decreed, among other things, that appellee is entitled by inheritance to an interest of 11-48ths in all the lands in controversy (including the southeast quarter of the northwest quarter of section 19, township 5 north, range 16 west, and the northwest quarter of section 26, township 5 north, range 17 west), in Perry County, Arkansas, known as the Cypress Mills place, except the tract in Yell County, in which she was decreed one-third interest, and that she have partition thereof; and also rendered a decree in her favor against appellant, Sarah Clark, in the sum of $11,670.67, for rents, issues and profits; and also a like judgment against appellant, Abram Miller, in the sum of $6296.45, and decreed a lien upon the lands remaining unsold at the commencement of this action, for the payment of these judgments, from which decree the said Sarah Clark and Abram C. Miller appealed.

5. TRUST:
Under voluntary conveyance.

It is insisted by appellants that the court below erred in decreeing that appellee had an interest in the Cypress Mills

place above described.    It appears from the evidence that this
place was conveyed by John W. Miller, the father of the ap-
pellant, Abram C. Miller, in his lifetime, to Abram Clark, in
his lifetime, on account of the failing health of John W., for the
sum of $1 ; that John W., who died in 1850, improved it and
had the use and enjoyment of it until his death ; that Eliza-
beth Miller, the widow of John W., and mother of Abram C.
Miller, always after that had the use and enjoyment, and re-
ceived the rents and profits of it, until her death in 1867, and
that neither of said brothers, Abram and Aaron Clark, was
ever in actual possession of it.    Under these facts, we are of
opinion that the Cypress Mills place was held by Abram Clark
in trust, and that appellee has no interest in it, and that it was
error to hold that she had ; and we therefore dismiss the com-
plaint as to the said Cypress Mills place.

It is urged by appellants that the court below erred as to **6. Plead-
ing and
Practice:**
the interest in the lands which the appellee would be entitled
**Matters of
record: Ex-
ceptions.**
to under the statutes of descents, and also as to the allowance
of interest.    But the appellee submits that these questions
were not raised by exceptions to the master's report and can-
not, therefore, be considered here.    In regard to the lands,
the facts, upon which the several interests of the parties de-
pend, appear upon the face of the pleadings and are undis-
puted.    Being already before the court, no report as to them
was necessary, and it was for the court, and not for the master,
to determine the law upon these facts, and declare the extent
of the several interests in the lands.    As to the other point, the
master might well report, under the directions of the court,
what the amount of interest would be on claims or debts at
certain rates, and if a party should desire to question the cor-
rectness of his computation, he might, perhaps, have to do so
by exception to his report.    But it would be for the court to
determine, under all the circumstances of each particular case,
whether the amount of interest so reported should be allowed
without the necessity of exception to the report.    But outside

of this, we find in the record exceptions as to interest which were reserved by the court for consideration, and not determined until the hearing, sufficiently broad to raise this question.

We therefore hold that both the foregoing questions are before us for consideration.

There is a controversy in the record as to the shares of the parties in the lands in controversy.

It appears that after the death of Abram, Aaron sold a part of the lands owned by them in common; and also that after the death of Abram, Aaron purchased certain other lands, a large part of which he sold before his death. We hold that the appellee, Ann E., has no interest or share in said lands sold as above mentioned which she can assert in this action, and that the court below erred in holding that she had.

As to the shares of the parties in the lands held by Abram and Aaron in common (except so much of them as was sold by Aaron in his lifetime), we find as follows:

Of said lands in Sebastian and Pope Counties the appellant, Sarah Clark, is entitled to 37-48th and the appellee, Ann E. Hershey, to 11-48ths.

Of said lands in Johnson and Perry Counties, appellant, Abraham C. Miller is entitled, as heir of his mother Elizabeth, to 7-8ths and appellee Ann E. Hershey is entitled to 1-8th.

Of the said lands in Yell County, the appellants, Sarah Clark and Abraham C. Miller, and the appellee, Ann E. Hershey, are entitled each to 1-3d.

As to the lands purchased by Aaron after the death of Abram, all of which appear to be in Sebastian County, we find as follows:

Of said lands (except so much of the same as was sold by Aaron in his lifetime) the appellant, Sarah Clark, is entitled to 5-6ths, and the appellee, Ann E. Hershey, is entitled to 1-6th. And we are of opinion that the court below erred in its findings as to the interest of the parties in the lands.

Clark v. Hershy.

Interest was allowed and included in the sums for which the court below decreed personal judgments against appellants at 6 and 10 per cent. per annum, from various dates, extending back long prior to the commencement of this suit.

Mr. Wait says, in his work on Actions and Defences: "As a general rule, no interest should be allowed on unliquidated accounts for goods, wares and merchandise, without an agreement to allow it, express or implied. It has been held in New York, that in an action upon an unliquidated demand, interest should be allowed from the time of the commencement of the action. In general, interest is not due in law on unliquidated damages or uncertain demands. Interest from the commencement of the suit is recoverable on a money demand, even though it is not claimed in the petition. If there be unreasonable and vexatious delay in making payment of an account, though it be not liquidated, interest may be recovered. Interest is considered as an incident, legally, to every debt certain in amount, and payable at a certain time. It is now allowed in all cases where one person detains the money of another unjustly and against his will." (*4th Wait's Actions and Defences, pp. 128, 129, 130 and 132*, to which we refer for citation of authorities.)

In *Tatum v. Mohr* (*21 Ark., p. 355*), this court said: "We understand the court to have instructed the jury that the plaintiff was entitled to recover interest upon the value of the shares thus ascertained, from the date of the exchange. This was error. On general principles, in a suit like the present, for unliquidated and contested damages, the plaintiff is not entitled to recover interest as such."

In *Brinkly and Wife v. Willis, et al.* (*22 Ark., pp. 9 and 10*), which was a suit in equity to recover the value of certain slaves that came to the hands of an administrator, and in which a recovery was had as to a slave named George, this court said: "But under the circumstances in this case, we are of opinion that no interest should attend that part of the

value of George that shall fall to Brinkly and wife before the beginning of this suit, as there has been delay in its commencement which ought to operate against the plaintiffs."

7. INTEREST: While we do not, from the foregoing authorities, attempt to When not formulate any rule applicable to all cases (see *Watkins v.* allowed. *Wassell, 20 Ark., pp. 419, and 420*) we think them quite sufficient to prevent any allowance of interest to appellee, prior to the institution of this suit, taking all the facts into consideration. We cannot agree with the counsel for appellee that there is, under the circumstances of this case, any implied contract for the payment of interest, or any unreasonable and vexatious withholding of it, or any withholding it against the will of the appellee. In addition to the long delay in bringing the action, all the parties were fully under the impression that the appellee had no rights at all in the property. Besides, the appellee consented to and assisted the appellant, Sarah, in the use of nearly $10,000 of notes, the proceeds of the sale of a part of the land for the benefit of her husband, and tacitly consented to the sale of another valuable part of it, by being present and making no objection to the sale, which was brought about by her husband. She and her husband lived in the house for four or five years with appellant, Sarah, during the most of which time her husband was the agent of the appellant, Sarah ; and it is almost impossible, from the evidence, to resist the inference that she knew of all, or nearly all, of the transactions of the appellant, Sarah, in regard to the property, and made neither complaint nor dissent. These things equally affect the case as to the appellant, Abram C. Miller, owing to the impression of all the parties as to appellee's rights, and the undisputed possession by appellants until just before the commencement of this action. To allow interest before the commencement of the action, would be to subject appellants to loss and injury superinduced by the conduct and actions of appellee. So we hold, under the circumstances of this case, as this court held in

*Brinkly v. Willis, supra,* that interest ought not to have been allowed before the commencement of this suit.

It appears that Nancy and Sarah, before the death of Nancy, and Sarah, after Nancy's death, sold certain parcels of the land in Sebastian and Pope Counties, which sales were made after Aaron's death, and before the commencement of this suit, and that Sarah sold one parcel thereof to W. M· Cravens after the commencement of this suit, which last men- tioned sale was for the sum of $500. And as it appears that appellee does not seek to interfere with these sales, we treat them as having been ratified by her, and the lands so sold as having been partitioned and set apart to the appellant, Sarah, by consent, leaving in said Counties of Sebastian and Pope the lands remaining unsold at the time of the commencement of this suit (except the lands sold to Cravens), to be partitioned between appellant, Sarah, and the appellee, giving appellee 11-48ths, and appellant, Sarah, 37-48ths of the lands so held in common by Abram and Aaron, in said Counties of Sebastian and Pope; and said appellee $\frac{1}{6}$th and said appellants 5-6ths of said unsold lands in Sebastian County, bought by Aaron after Abram's death. The tract of land in Yell County, devised by Aaron's will to appellee, is to be partitioned between the ap- pellee and appellants, Sarah and Abram C. Miller, giving to each of them $\frac{1}{3}$d; and the lands in Johnson and Perry Counties are to be partitioned between the appellee and Abram C. Miller, giving appellee $\frac{1}{8}$th and Miller 7-8ths.

The lands partitioned by sale and consent, as hereinbefore held, to appellant, Sarah, are valued at the prices for which they were sold, less 11-48ths of $3722.60, as to said sales of said land in Sebastian and Pope Counties, held in common by · Abram and Aaron, and $\frac{1}{6}$th of $3722.60 as to said sale of said lands in Sebastian County, bought by Aaron after Abram's death, the said sum of $3722.60 being the aggregate amount of taxes ($622.60) paid by Sarah on said lands, and of moneys ($3100) part proceeds of sale of said lands, which she had de-

posited with Brooks & Latham, and which, without fault of her own, she lost by failure of said firm, and for which two sums she was allowed credit by the court below, for the purpose of com pleting the partition; and the shares which may be allotted to appellant, Sarah, in the lands in Sebastian, Pope and Yell Counties, are to be charged with a sufficient amount of owelty to make appellee's shares therein (exclusive of such of said lands as Aaron sold in his lifetime) equal to 11-48ths of said land held in common by Abram and Aaron in Sebastian and Pope Counties; ⅙th of the land bought by Aaron after Abram's death in Sebastian County, and 1-3d of the tract of land in Yell County (devised by Aaron's will to appellee) including the value of the lands sold by Nancy and Sarah, or either of them, as hereinbefore stated, which owelty is to be a lien upon the shares of said appellant, Sarah, in said lands but no personal judgment for the same is to be entered.

It appears, however, that the appellant, Sarah, purchased from B. F. Hershy, the husband of appellee, while he was acting as an agent for said appellant, Sarah, certain real estate in Clarksville, Johnson County, for which she paid him the sum of $9937 in notes representing proceeds of sales of parts of said lands held in common, made by appellant, Sarah; that this transaction was made with the knowledge, consent and approbation of appellee, and that she joined her husband in the deed to appellant, Sarah; and that said real estate was not worth more than $4000, making the difference between the price paid for, and the value of said real estate, $5937; and after the owelty to which the appellee is entitled as between herself and appellant, Sarah, is ascertained, the said sum of $5937, less 11-48ths of said sum of $9937, is to be deducted therefrom, as so much owelty already paid by said appellant, Sarah; and if said sum exceeds said owelty, then no owelty is to be allowed said appellee.

As it does not appear that any of the lands in Johnson, Perry and Yell Counties, in which appellee and appellant,

Abraham C. Miller, are entitled to share by partition, have been sold, the question of owelty does not arise between them.

We are of opinion from the facts in evidence that, as between herself and the appellant, Sarah, the appellee ought to have her part of the rents (according to the shares she is entitled to, as hereinbefore held) in the lands in Sebastian and Pope Counties, as follows: that is to say, she is entitled to her part of the rents of said lands in Sebastian and Pope Counties, sold after the death of Nancy, from the death of Nancy up to the time they were respectively sold, so far as the evidence shows that such rents were received by the appellant, Sarah. She is not entitled to rents from any period anterior to the death of Nancy, because before that time the rents were covered by Nancy's life estate, with the title to which she had been reinvested by Aaron's will; nor after the sales, because we have held said sales, owing to the circumstances under which they were made, to be a partition by consent. The appellee is also entitled to her said shares of the rents of that part of said lands remaining unsold at the commencement of this action (except the place afterwards sold to Cravens, and the lots in Fort Smith, Sebastian County, known as the homestead place), from the time of the death of Nancy, so far as any such rents are shown by the evidence to have been in fact received by appellant, Sarah. As to the homestead place (lots 4, 5 and 6, and part of lots 9 and 10, in block 26, in Fort Smith, Sebastian County), appellee is entitled to her share of the rental value thereof from 1870, the time from which it was allowed by the court below, and of the Cravens place up to the date of the sale thereof, for which rents appellee is entitled to personal judgment against the appellant, Sarah, with 6 per cent. per annum interest thereon from the time of the institution of this suit, as to rents then due, and on subsequent rents from the dates of their accrual, less 11-48th of the sum of $6047.97 as to the lands held in common by Abraham and Aaron in Sebastian and Pope Counties, and one-sixth of said

·sum as to the lands bought by Aaron after Abraham's death, said sum having been paid out by Sarah for improvement on said land, and allowed her as a credit by the court below, and not questioned here by appellee on appeal. By this we are not deciding whether or not a tenant in common can recover for improvements, or set them off against rents; we make the allowance because it was made by the court below, and is not questioned here.

Appellee is also entitled to her said share of rents arising from said lands in Johnson and Perry Counties as against the appellant, Abram C. Miller, from his mother's death in 1867, so far as the evidence shows that the same have been received by him, for which she is entitled to personal judgment against him, with 6 per cent. per annum interest thereon from the date of the institution of this action, as to rents then due, and subsequent rents after their accrual.

**8.  LIEN: On partition of land, etc.**        The court below decreed a lien on appellant's shares of the unsold lands to secure the payment of rents and profits. This character of lien has been sustained by the courts of New York, but we find no discussion of the question in any of the cases in that State coming under our notice. In a Kentucky case, in which it was the only point in issue, the matter was discussed, and the lien held not to exist; and it is denied by other authorities (*Burch v. Burch, 82 Ky., 622; Jones on Liens, sec. 1155; Hancock v. Day, 36 American Decisions*).

We can see no ground for such a lien on principle, and hold that the court below erred in granting it.

For the errors above indicated the decree of the court below is reversed; and this cause is remanded to the Circuit Court with instructions to make the partition and settle the accounts between the parties in strict accordance with this opinion; and with the further instructions that in doing so no further evidence shall be taken or considered outside of that which has already been taken, except as to rents accruing subsequent to the decree herein.

SANDELS, J., being disqualified, did not sit in this cause.