SECURITY MUTUAL LIFE INSURANCE COMPANY *v.* LITTLE.

Opinion delivered June 28, 1915.

1. CONTRACTS—VOID CONTRACT—RECOVERY OF MONEY PAID THEREUNDER.— Courts will not aid any party to a contract which is void as against public policy, either to enforce its provisions on the one hand, or by permitting the recovery of money paid in the performance of its conditions, on the other.

2. CONTRACTS—VOID CONTRACT—RECOVERY OF CONSIDERATION.—Appellees insured the lives of certain persons in appellant insurance company, giving notes for the premiums, which notes appellees paid. *Held,* the contract between the parties being void as against public policy, appellees having no insurable interest in the parties whose lives were insured, that they could not recover from appellant the amount paid out as premiums.

Appeal from Benton Circuit Court; *J. S. Maples,* Judge; reversed.

*W. N. Ivie,* for appellant.

1. The complaint shows on its face that the contracts out of which this litigation developed were wagering contracts and contrary to public policy. It is the settled rule that where a contract is illegal because contrary to posi-

tive law, or against public policy, an action can not be maintained either to enforce it directly, or to recover the value of services rendered under it, or money paid on it. 47 Ark. 378; 91 Ark. 205; 81 Ark. 48; 112 Va. 780; 21 Am. & Eng. Ann. Cas. 1088; 4 *Id.* 712, 714, 716; 9 Cyc. 546; 63 Ark. 318, 322.

2.   The payments were voluntary, with full knowledge of all the facts, and for this reason appellees can not recover.   102 Ark. 152; 49 Ark. 70; 70 Ark. 5; 72 Ark. 552; 86 Ark. 178; 92 Ark. 306.

*Dick Rice* and *Jeff Rice,* for appellees.

1.   The complaint alleges not only that the policies are non-enforcible because they are wagering contracts, etc., but also that the proposition of taking out these policies was *proposed by appellant's agent* and executed by him, and that appellees *acted in good faith* in the transaction, executed their notes for the first year's premium, which were sold and the proceeds thereof *were received and retained by the appellant.*   This is not a case where the parties are *in pari delicto,* or of the appellees attempting to enforce an illegal contract, but rather an action for money had and received, as appears by this allegation of the complaint: ''Plaintiffs further allege that the defendant is indebted to the plaintiffs in the sum of $2,087.73, which was received by the defendant for plaintiff's use.''   31 Ark. 385; 110 Ark. 578; 45 L. R. A. 243; 75 N. E. 941; 98 Ark. 52; 25 Cyc. 708; 70 N. E. 258, 262; 64 Ia. 101, 19 N. W. 865; 27 Cyc. 874; 43 N. Y. 273.

2.   Under the allegations of the complaint to the effect that the Arkansas National Bank recovered a judgment against the appellees on the notes, which was afterwards affirmed on appeal, the question of voluntary payment passes out of the case.   Compulsory payment of a judgment can not be classed as voluntary.   49 Ark. 70; 27 Cyc. 866; 50 N. E. 86; 18 S. W. 260.

SMITH, J.   This cause was tried in the court below upon an agreed statement of facts from which it appears that on and prior to April 7, 1913, the appellees, who

were the plaintiffs below, were the school directors for the Special School District of Rogers, Benton County, and in order to provide means for the payment of bonds in the sum of $35,000.00, issued by said district, they took out eighteen policies of life insurance upon the lives of young men residing in that district for the aggregate sum of $35,000. The amount of the first year's premium on all of said policies was $1,674.20, and it was agreed at the time of issuing these policies that if the district did not have the money with which to pay these premiums that the agent of the life insurance company would accept the note of said district for the premium, endorsed by appellees. That the policies were issued and the appellees signed two notes for the total amount of the premiums, **each bearing interest at the rate of 10 per cent.** per annum from date until paid, and delivered them to the agent in payment of said premium. The agreed statement of facts further recited that the agent endorsed and sold said notes before maturity to the Arkansas National Bank, of Fayetteville, and, as the agent for the insurance company received the face of the notes, a large part of which was paid to the defendant company. That thereafter the bank was informed by appellees' attorney that said policies were void, and the bank immediately made a written demand upon said insurance company for the return of said money, which the company refused to pay, and thereupon the bank instituted suit on said notes against appellees and the insurance agent, and recovered judgment on said notes against appellees and the agent for the face of the notes with the accrued interest. That said insurance policies were held by the Supreme Court to be illegal, null and void, as contrary to public policy in the case of *Little et al* v. *Arkansas National Bank, of Fayetteville,* 105 Ark. 281, for the reason that said school district and appellees had no insurable interest in the lives of the young men on whose lives said policies were issued. That appellees had been compelled to pay, and have paid, the amount of said judg-

ment, with all costs. Appellees now sue to recover this amount.

It appears from the opinion of this court in the case of *Little et al.* v. *Arkansas National Bank,* 113 Ark. 72, 167 S. W. 75, that appellees resisted the payment of these notes, and finally paid them only after an adjudication by this court of their liability to the bank for the reason stated in the opinion in that case.

Appellees recovered judgment in the court below for the entire amount paid by them, and this appeal questions their right to maintain this suit.

The former opinions in this case have decided that the notes out of which this litigation arose were void as between the parties thereto because it was based upon a consideration which was held to be in contravention of public policy, and the suit to recover this money necessarily involves an inquiry into the circumstances under which it was paid. In the case of *Martin* v. *Hodge,* 47 Ark. 378, this court said:

"The test to determine whether a plaintiff is entitled to recover in an action like this or not, is his ability to establish his case without any aid from an illegal transaction. If his claim or right to recover depends on a transaction which is *malum in se* or prohibited by legislative enactment, and that transaction must necessarily be proved to make out his case, there can be no recovery." See, also, *Burks* v. *Harris,* 91 Ark. 205; *Wood* v. *Stewart,* 81 Ark. 48.

Appellees insist that they are not seeking to enforce any right growing out of the contracts of insurance. But we think this is the effect of their action. They can not recover here without showing circumstances under which the money was paid, and when this is done, it appears that the litigation is bottomed upon a contract which was illegal because it was contrary to public policy.

In the case of *Edwards* v. *Randle,* 63 Ark. 318, a contract was made for the sale of the fixtures of a post office, in which the vendor, who was the postmaster, agreed to resign his office and recommend the appointment of the

vendee as his successor. The purchase price of the fix-
tures was paid, but there was a subsequent refusal on
the part of the vendor to perform, whereupon the vendee
sued to recover the money paid by him under this con-
tract. In that case it was held that the contract was void
because its subject-matter was contrary to public policy,
and in holding that the vendee had no right to maintain
the suit it was said: "The court can not lend its aid to
either party in respect to any claim or thing involved in
such a contract."

The case of *Roller* v. *Murray*, 112 Va. 780, is anno-
tated in 27 Am. & Eng. Ann. Cases, 1080, where an ex-
tensive case note is found, citing many authorities on this
subject. That was a case in which an attorney sued for
services performed under a contract which had been held
to be champertous and void because it was an agreement
by an attorney to undertake to carry on litigation at his
own risk, or without cost to his client, for a share of the
recovery. Discussing the general principles involved in
the right to maintain such a suit, it was said:

"On the other hand, it is also well settled, as a gen-
eral rule, that where the contract is illegal because con-
trary to positive law or against public policy, an action
can not be maintained either to enforce it directly or to
recover the value of services rendered under it, or money
paid on it."

Continuing, the court quoted from 9 Cyc. 546, as fol-
lows:

" 'The law, in short, will not aid either party to an
illegal agreement. It leaves the parties where it finds
them. Therefore, neither a court of law nor a court of
equity will aid the one in enforcing it or give damages
for a breach of it, or set it aside at the suit of the other;
or when the agreement has been executed in whole or in
part by the payment of money or the transfer of other
property, lend its aid to recover it back. The object of
the rule refusing relief to either party to an illegal con-
tract, when the contract is executed, is not to give validity
to the transaction, but to deprive the parties of all right

to have either enforcement of, or relief from, the illegal agreement. * * * Money paid under an agreement which is executed, whether as the consideration or in performance of the promise, can not be recovered back where the parties are in *pari delicto,* and goods delivered or lands conveyed under an illegal agreement are subject to the same rule.' "

We further quote from that case as follows:

"Pollock, in his work on Contracts (Wald's Ed.), after stating the general rule, that money or property paid or delivered under an unlawful agreement can not be recovered back, says, that 'the principle proper in this class of cases is that persons who have entered into dealings forbidden by law must not expect any assistance from the law, save so far as the simple refusal to enforce such an agreement is unavoidably beneficial to the party sued upon it. As it is sometimes expressed, the court is neutral between the parties.' "

Accepting the view of the law that the courts should not lend their aid to any party to a contract which is void as against public policy, either by enforcing its provisions, on the one hand, or by permitting the recovery of money paid in the performance of its conditions, on the other, we must hold that this suit can not be maintained, and the judgment of the court below will, therefore, be reversed and the cause will be dismissed.