SOUTHERN SURETY COMPANY *v.* DARDANELLE ROAD
IMPROVEMENT DISTRICT No. 1.

Opinion delivered November 2, 1925.

1. STATUTES—CONSTRUCTION.—When the language of a statute is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction.

2. HIGHWAYS—RECOVERY OF PREMIUMS ON SURETY BOND—FAILURE OF CONSIDERATION.—Premiums paid by a road district for a surety bond on a construction contract may be recovered where the contract was illegally entered into before the assessments of bene-

fits became final; the benefits being finally determined to be less than the cost of the improvement.

3. HIGHWAYS—PROVISION AS TO REVISION OF ASSESSMENTS.—Acts of Special Session 1920, No. 63, § 2, amending Road Laws 1919, No. 244, in providing that the assessment of benefits was to stand "until revised as provided in said act" of 1919, referred to the entire act of 1919, and intended to leave to the commissioners all the powers and duties to revise the assessments that were delegated to them in Road Laws 1919, No. 244.

4. HIGHWAYS—VALIDITY OF CONSTRUCTION CONTRACT AND BOND.— Where Acts Special Session 1920, No. 63, enacted after a construction contract and surety bond were executed, made material changes in the roads to be improved, the construction company could not be bound by such changes, and no liability accrued upon the bond securing performance of such contract.

5. HIGHWAYS—RECOVERY OF PREMIUMS ON SURETY BOND.—Where a road district was obligee in a surety bond and the construction contract which required the district to advance premiums for such bond was made part of the bond, and the road district actually advanced money for premiums which was paid to the surety company, there was sufficient privity between the district and the surety company entitling the district to recover the premiums paid upon abandonment of the project.

6. APPEAL AND ERROR—NONJOINDER OF PARTY—WAIVER.—Where, on the abandonment of a road project, a road district sued the contractor's surety to recover premiums advanced, objection that the contractor should have been made a party was waived by failure to raise it in the trial court.

7. HIGHWAYS—SUIT TO RECOVER PREMIUMS ADVANCED—DEFENSE.—In an action by a road district, on abandonment of a road project, to recover premiums paid by it to the contractor's surety, it is no defense that the road district was a party to an illegal contract, since it is not the fault of the district, but of the commissioners, that the contract was entered into.

8. CONTRACTS—ILLEGALITY—RECOVERY.—The rule that parties *in pari delicto* may not recover upon an illegal contract has no application to contracts of a corporation void merely because *malum prohibitum* or *ultra vires*.

9. PRINCIPAL AND SURETY—LIABILITY OF SURETY COMPANY.—The total amount of premiums illegally paid to the agent of a surety company by a road district may be recovered where the agent acted within his apparent authority in collecting them, though the company did not receive all the premiums.

Appeal from Yell Chancery Court, Dardanelle District; *W. E. Atkinson*, Chancellor; affirmed.

*Samp Jennings* and *Buzbee, Pugh & Harrison*, for appellant.

*Ben Ward, Hays, Priddy & Hays*, and *Coleman, Robinson, House & Riddick*, for appellee.

Tom W. Campbell, Special Justice. This suit was brought in the Yell Chancery Court, for the Dardanelle District, by appellee against appellant, to recover money alleged to have been paid appellant by appellee as premium on certain construction bonds executed by appellant as surety for Rich Construction Company in which bonds appellee was obligee.

Rich Construction Company was not made a party to the suit. Appellant interposed a general demurrer to the complaint, but did not raise any objection, by demurrer or answer, to the failure of appellee to make Rich Construction Company a party, nor did appellant ask to have said construction company made a party.

The facts disclosed by the record in this case are substantially as follows: The Dardanelle Road District of Yell County was created by act 244, passed by the regular session of the 1919 Legislature, and approved March 11, 1919. The roads to be improved by said district, as described in that act, were as follows: "A road starting at the pontoon bridge in the town of Dardanelle and running on streets to be selected by the commissioners and southwesterly to Mosely and Chickalah.

"A road beginning on the western border of section seven (7), township seven (7) north, range twenty-one (21) west, and running southeasterly through Dardanelle on streets to be selected by the commissioners, and thence south on the west line of sections five (5) and eight (8), township six (6) north, range twenty (20) west, to the southwest corner of section eight (8), and thence to the southeast corner of said section, thence south to the southeast corner of section thirty-two (32), of said township and range; thence southeasterly and easterly and

northeasterly through Neely and Fowler to the southeast corner of section twenty-three (23), township six (6) north, range nineteen (19) west, thence north to the northeast corner of said section.

"A road leaving the last-named road on the outskirts of Dardanelle and running southwesterly and southerly to the center of section thirty (30), township six (6) north, range twenty (20) west.

"A road starting from some point in the town of Dardanelle to be selected by the commissioners and running west to the top of Mt. Nebo; and said district shall consist of the following territory in Yell County, and shall include all towns within the territory."

On January 21, 1920, the board of commissioners of said district entered into a contract with Rich Construction Company for the construction of the roads within the district for the total sum of $792,278.50. On January 26, 1920, the assessment of benefits was filed in the office of the county clerk. The amount of benefits assessed, as shown by the assessment filed on said date, was $1,716,910.

On February 6, 1920, act 63 of the 1920 Special Session of the General Assembly was approved. This act 63 amended the original act 244 by making substantial changes in the roads to be improved by the district, the roads to be improved being described in said amendatory act as follows:

"A road beginning on the western border of section 7, township 7 north, range 21 west, at a point where the present Dardanelle and Paris road crosses the west line of said section 7, and running southeasterly along established highways through Dardanelle on streets to be selected by the commissioners to the northeast corner section 5, in township 6 north, range 20 west, thence in southerly, southeasterly, and easterly direction to the southeast corner of section 8, in township 6 north, range 20 west, thence in a southerly direction to a point at or near the southeast corner of section 32 of said township

and range; thence southeasterly and easterly and north-easterly through Neely and Fowler to the southeast corner of section 23, township 6 north, range 19 west, thence north and to the northeast corner of said section, section 23 of said township and range; a road beginning at a point in the above described route where the present Centerville and Neely road intersects the above described road and running in a general westerly direction to a point on the west line of section 5, township 5 north, range 20 west, where the present Centerville and Neely road crosses the said west line of said section 5.''

Said amendatory act also purported to ratify and confirm all the official acts of the commissioners of said district up to its enactment, including the contract with Rich Construction Company; and § 2 of said amendatory act further provided as follows:

''The assessment of benefits against each tract and parcel of real estate, railroad right-of-way, and tramroads heretofore made by the commissioners of said district on the basis of the improvement contemplated in said act, as hereby amended and filed with the county clerk of Yell County, is hereby ratified and confirmed and declared to be just, equal, and proportionate and the same shall stand as the assessment of benefits of said district until revised as provided in said act.''

On March 25, April 1, and April 8, 1920, notice of the filing of the assessment of benefits in said district with the county clerk was published in a newspaper having general circulation in the district, setting April 23, 1920, as the day for hearing on said assessments before the commissioners of said district in the court house at Dardanelle.

On April 23, 1920, a large number of the landowners of said road district met at the court house at Dardanelle for the purpose of protesting against the assessment of benefits of said district. The meeting was adjourned to May 20. 1920, when two of the commissioners resigned and their successors were appointed, after which, the

board of commissioners heard and considered the protests which had been filed against the assessment of benefits and reduced all benefits which had been assessed against the property of said district 75 per cent. At said meeting the board of commissioners also adopted the following resolution:

"Whereas, the board of commissioners of Dardanelle Road Improvement District of Yell County, after an investigation, is of the opinion that the cost of constructing the improvement contemplated largely exceeds the benefits which would be derived by the lands, lots and improvements of the district from said construction, and,

"Whereas, the board is unwilling to impose the burden upon the landowners of the district.

"Now, therefore, be it resolved: That it is the sense of the board that the proposed improvement ought to be abandoned, and that the same is hereby abandoned; that the secretary is hereby directed to advertise, by inserting a notice in some paper having a general circulation in the district, once a week for two consecutive weeks, calling upon all persons having claims against the district to file same with the secretary, at his office in Dardanelle, Arkansas, within thirty days."

The contract between the commissioners of the road district and Rich Construction Company provided that said company should "cover the entire contract with satisfactory surety bonds on ten-mile sections," and the road district agreed in said contract to advance the premiums on the surety bonds, such advances to be repaid to the district out of the 15 per cent. retained on the monthly estimates under said construction contract.

On February 3, 1920, the commissioners of the road district issued certificates of indebtedness aggregating $17,800, and sold them to E. J. Hahn for that amount of cash.

On February 11, 1920, the district issued its check payable to Rich Construction Company for $17,800, being the amount the attorney for the district was told

would be required to pay the premiums on the surety
bonds which were to support the construction contract.
This check was delivered by the commissioners of the
district to the attorney for the district, who took it to
Louis Rich of Rich Construction Company, who indorsed
it, and the attorney for the road district then took the
check to the office of appellant in Little Rock, gave it to
appellant's agent in charge of said office and informed
said agent what the check was for. Appellant's said
agent told said attorney for the district the bonds would
be sent up, which was later done.

Copies of the construction contract were attached to
and made a part of the surety bonds executed by
appellant.

No work was ever done under the construction con-
tract.

The Legislature of 1921, by act 275, approved March
17, 1921, repealed act 244, which created said road dis-
trict, and also amendatory act 63, and conferred jurisdic-
tion on the chancery court of Yell County for the Dar-
danelle District to wind up the affairs of said district.

Demand was made on appellant to pay back the
$17,800 which had been paid to its agent, from the funds
of said district, which demand was refused, and hence
this suit was brought.

It is contended by counsel for appellee that the con-
struction contract, in support of which the surety bonds
were executed, was not legally effective when entered
into because the assessment of benefits had not then been
filed, so that it had not been determined that the benefits
would exceed the cost of the improvements; and that said
construction contract never became legally effective,
because, when final action was taken by the commis-
sioners of said district upon the assessment of benefits,
the benefits were found to be much less than the cost of
the improvements to be made; that therefore the surety
bonds never became effective, that no liability ever
accrued thereon, and that, the purpose for which the

$17,800 was paid to appellant having failed, appellant should refund said money to appellee.

Counsel for appellant contended that act 63, approved February 6, 1920, confirmed and made final the assessment of benefits filed January 26, 1920; and, since the benefits as shown by said assessment exceeded the cost of the improvement, the construction contract, and the surety bonds in support thereof, became legal and binding, and that the premiums on said bonds were then earned; and, further, that said act 63 confirmed and legalized said construction contract and thereby made said surety bonds effective. Appellant's counsel further contend that, even if said construction contract was never effective, appellee cannot recover from appellant the money paid as premium on said bonds, first, because they contend there is no privity between appellant and appellee, and, second, because they contend that, if the transaction in which the money belonging to the road district was paid to appellant was illegal, then appellee would be *in pari delicto* and cannot invoke the aid of the courts to recover the money so paid. And appellant contends that in no event can appellee recover that portion of the $17,800 which was in excess of the actual amount of the premiums on said bonds, which is shown by the proof to have been only $11,888.64.

The construction contract, having been entered into before the assessment of benefits had become final, was not effective when made. Had it been finally determined that the benefits exceeded the cost of the improvement, the contract might have become binding. But, when the commissioners heard the protests, they reduced the benefits until they were far below the cost of the improvements to be made.

Section 7 of act 244, which created this district, is as follows:

"The assessment of benefits of said district shall be filed with the county clerk of Yell County, and the secretary of the board shall thereupon give notice of its

filing by publication for two weeks in a newspaper published and having a *bona fide* circulation in that county. This notice may be in the following form:

"The Dardanelle Road Improvement District of Yell County.

"Notice is hereby given that assessment of benefits and damages of the above district has been filed in the office of the county clerk of Yell County, where it is open to inspection. The following lands, not in the district as originally laid out, have been assessed for the improvement: (Here will follow description of the lands beyond the borders of the district which have been assessed).

"All persons wishing to be heard on said assessment will be heard by the commissioners of said district at the county court room at Dardanelle, in Yell County, on the......day of......192...... ..........................Secretary."

"On the day named in said notice it shall be the duty of the commissioners to meet at the place named, and to hear all complaints against said assessment, and to equalize and adjust the same, and their determination shall be final, unless suit is brought in the chancery court of the county where the lands lie within thirty days thereafter to set aside their finding."

Section 8 of said act 244 is as follows: "The commissioners may, not oftener than once a year, reassess the benefits in said district; but in the event the district shall have incurred an indebtedness or issued bonds the total amount of assessed benefits shall never be diminished."

It is contended by counsel for appellee that the phrase "until revised as provided in said act," at the end of § 2 of act 63, amendatory of said act 244, refers to the revision of the assessment of benefits authorized in § 7 of said act 244; and that said act 63 did not make final the assessment of benefits as filed, but left the commissioners empowered to hear protests and to revise the assessment, as was done later.

It is the contention of counsel for appellant, however, that this concluding phrase "until revised as provided in said act," refers only to the annual reassessment provided for in § 8 of act 244.

The following well known rule for construing statutes is applicable here: "The intention and meaning of the Legislature must primarily be determined from the language of the statute itself, and not from conjectures *aliunde*. When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning. This principle is to be adhered to, notwithstanding the fact that the court may be convinced by extraneous circumstances that the Legislature intended to enact something very different from that which it did enact. The current of authority at the present day is in favor of reading statutes according to the natural and most obvious import of the language without resorting to subtle and forced constructions for the purpose of either limiting or extending their operation. If the words of the act are plain and the legislative purpose manifest, a contrary conception of it, however produced, cannot legitimately be permitted to create an obscurity to be cleared up by construction, influenced by the history of the legislative labors which constructed the law. No motive, purpose, or intent can be imputed to the Legislature in the enactment of a law other than such as are apparent upon the face and to be gathered from the terms of the law itself. A secret intention of the lawmaking body cannot be legally interpreted into a statute which is plain and unambiguous, and which does not express or imply it. Seeking hidden meaning at variance with the language used is a perilous undertaking which is quite as apt to lead to an amendment of a law by judicial construction as it is to arrive at the actual thought in the legislative mind." 25 R. C. L. p. 961, § 217.

The language of this statute is plain and unambiguous. The assessment of benefits as filed were to stand "until revised as provided in said act," not as provided in § 7 of said act or in § 8 thereof, but "as provided in said act." To limit the application of this phrase to any one section of act 244, it is necessary to read into it words of limitation not written therein by the legislators.

The fact that the concluding phrase of the section of said act 63, which deals with the confirmation of assessments, is couched in language substantially different from that used in corresponding sections of other curative acts, shows that the Legislature did not intend the confirmation in said act 63 to have the same effect as in other curative acts.

In act 115 of the 1917 Legislature, passed upon by this court in *Faver* v. *Wayne,* 134 Ark. 30, the assessments, is couched in language substantially different from be ordered according to law."

Identically the same language is used in act 43, approved February 4, 1920, construed in *Gibson* v *Spikes,* 143 Ark. 274.

In act 398 of 1921, construed in *Road Imp. Dist. No. 6* v. *St. L. S. F. R. Co.,* 164 Ark. 444, it was provided that the assessments should stand "until a *new assessment* may be made as provided by law." And in *Western Lawrence Road Dist.* v. *Friedman-D'Oench Bond Co.,* 162 Ark. 362, the language was "until a *new assessment* is ordered by the board in the manner provided by the law by which said district was created."

But in the curative and amendatory act, No. 63 involved in the instant case, the assessments were to stand, not until a *new assessment* was made, but "until *revised* as provided in said act" creating the district. Had it been intended by said act to cut off the power of the commissioners to revise the assessments as provided in § 7 of the creative act, and leave only the power to make the annual re-assessments provided for in § 8 of said creative act, the Legislature would, doubtless,

have used language clearly conveying that meaning, as was done in the other curative acts above referred to. But, since the assessments here were to stand only "*until revised*," and not until *new assessments* were made, it is obvious the Legislature intended only to relieve the necessity of making a new assessment to meet the modifications of the improvements provided for in act 63, and to leave to the commissioners all the powers and duties to revise the assessments that were delegated to them in the creative act.

Moreover, act 63 made very substantial changes in the roads that were to be improved. This fact should be considered in determining whether the Legislature meant, by act 63, to make final the assessment of benefits filed before the passage of said act, or to leave the commissioners empowered to revise them to conform to the routes of the roads as modified by said act 63. It is not probable that the General Assembly intended to cut off the power of the commissioners to revise the assessments by the very act which, by making material changes in the improvements to be made, increased the probability that such revision would be necessary.

We construe the concluding phrase of § 2 of act 63 as preserving to the commissioners of said district all the power and duty conferred upon them in act 244 to revise the assessment of benefits, both as provided in § 7 and in § 8 of said act. We therefore hold that the act of the commissioners in reducing 75 per cent. of the assessment of benefits as filed, was legal. It follows that the benefits, as finally determined, were less than the cost of the improvements to be made, and that the construction contract and the surety bonds in support thereof were never legally effective, and that no liability on said surety bonds ever attached, and that the payment of the bond premiums by the commissioners was illegal.

We hold that said contract and bonds were never legally binding or effective for another reason. Act 63

was enacted after this construction contract was entered into. As has already been said, act 63 substantially changed the roads to be improved. Certain laterals were omitted, and one additional lateral was added. While the Legislature might bind the road district, a creature of the Legislature, by such a material change in the subject-matter of the contract, it could not bind the construction company to such change.

In *Western Randolph County Rd. Imp. Dist.* v. *Clifford*, 150 Ark. 94, it was held: "Where H agreed in writing to purchase the entire anticipated bond issue of a road improvement district created by a special act, and deposited a certified check 'to guarantee compliance with the terms of the contract,' the check to be held in trust until the bonds were tendered in compliance with the contract, and subsequently the Legislature materially changed the act creating the district, and thereby substantially altered the contract itself, H's estate was absolved from liability on the certified check."

We think the principle announced in that case controls this one. The bonds for which appellee paid the premiums never having become binding or effective, and the purpose for which said money was paid having failed, it remains to be determined whether appellee has the right to recover said money from appellant. We think the execution and delivery of the bonds by appellant, making appellee the obligee therein and making the construction contract between appellee and the construction company a part of each bond, carrying a clause to the effect that appellee was to advance the premiums on the bonds, coupled with the actual payment of the money by appellee to appellant, establishes privity between appellant and appellee; and, so holding, it is not necessary for us to decide whether privity between the parties is essential to recovery of money from the person into whose hands it has been traced, by the party paying it, where the purpose for which it is paid has failed.

It is contended by appellant that, if it is held liable to appellee for this money, it might in some future action be held liable for the same money to Rich Construction Company, and that, in the event of any such action against it by Rich Construction Company, the judgment in this case could not be pleaded as a defense, said construction company not being a party to this suit. But the parties to this suit are entitled to have it determined according to their respective rights and equities in the subject-matter thereof, without regard to any claims that might be later asserted against either of them in respect to said matter; and, if either felt that any other party was essential to this litigation, that objection should have been raised in the trial court. There having been no objection raised in the lower court on account of defect of parties, that objection must be held to have been waived. *Less* v. *English,* 75 Ark. 288.

Counsel for appellant contend that, if it be held that the contract was illegal, the road district was equally at fault in being a party thereto, and cannot invoke the aid of the courts to recover the money paid out by it in pursuance of such illegal contract; and cite the case of *Security Mutual Life Ins. Co.* v. *Little,* 119 Ark. 498, in support of their contention.

But it was no fault of the district itself—the tax payers—that an illegal contract was entered into and money unlawfully expended. That was the fault of the commissioners. It is to protect the taxpayers against harmful acts of their commissioners that such contracts are held to be illegal. If the beneficiaries of such contracts could defeat the recovery of the taxpayers' funds paid them by the commissioners by setting up as a defense the very fault of the commissioners that caused the loss of funds, then it would afford the district no protection to deny the commissioners the power to make such contracts.

In *Security Mutual Life Ins. Co.* v. *Little, supra,* it was not the school district that was suing for the recovery

of the money, but the directors of the district suing personally for their own private funds which they had expended in pursuance of the contracts held to be against public policy.

It has been generally held that the rule that the courts will not enforce illegal or immoral contracts where the parties are *in pari delicto* has no application to contracts of a corporation void merely because *malum prohibitum*, or *ultra vires*. *In re Citizens' Mutual Fire Ins. Co.*, 162 Mich. 466.

It is finally contended by counsel for appellant that, since the proof shows the actual premiums on the bonds aggregated only $11,888.64, appellee should not be permitted to recover the excess above that amount.

But the attorney for the district testified that he delivered the $17,800 check to the agent of appellant and informed him that it was to pay the premium on these bonds. This agent of appellant testified that he cashed the check, deducted his commission, and turned the balance over to another agent of appellant, who is now dead.

There is evidence to show that the net amount left out of a total premium of $11,888.64 after deducting the agent's commission of 15 per cent. is all that was sent by the agent to the home office of appellant. But there is no evidence as to what became of the residue of the $17,800 over and above the $11,888.64 accounted for by appellant's agent. This agent in accepting this money was acting within his apparent authority.

Appellee having traced the entire $17,800 into the hands of appellant's agent and having informed said agent that it was to pay the premium on these bonds, we think it devolved upon appellant to prove that this excess passed out of its hands. Payment of this money to appellant's agent was, in legal effect, payment to appellant. If appellant's agent failed to account to appellant properly or misappropriated some of the money, it is a matter between such agent and appellant.

We think the decree of the chancery court, awarding appellee judgment against appellant for $17,800 with lawful interest, is correct, and it is therefore affirmed.

SMITH, J., concurs, except as to recovery of excess over the actual premium of the bonds.

HART, J., disqualified.