TATE *v.* GOULD.

Opinion delivered November 7, 1927.

1. CONTRACTS—VALIDITY.—Courts will not aid party to enforce a contract which is void as against public policy, either by enforcing its provisions on the one hand or by permitting the recovery of money paid in the performance of its conditions on the other.

2. JOINT ADVENTURES—ILLEGAL CONTRACT.—In a suit for accounting for the profits derived from a joint adventure in buying and selling bonds of improvement districts, relief was properly denied where it appeared that the parties contemplated and used illegal means to induce the sale of bonds to themselves.

3. EVIDENCE—PAROL PROOF OF CONSIDERATION OF NOTE.—No rule of evidence is violated by admitting parol proof of the consideration for the promissory note for the purpose of showing the want of consideration, failure of consideration, or illegality thereof.

4. BILLS AND NOTES—ILLEGAL CONSIDERATION.—The indorser of notes was not entitled to recover against the makers, where the evidence showed that indorsement was part of a joint adventure in buying and selling improvement district bonds, which was contrary to public policy as contemplating the use of illegal means and carried on by such illegal means.

5. CONTRACTS—INVALIDITY.—An illegal contract can no more be enforced at law than in equity.

Appeal from Ouachita Chancery Court, Second Division; *George M. LeCroy,* Chancellor; reversed in part.

STATEMENT OF FACTS.

On January 30, 1925, J. M. Gould sued R. M. Tate and C. O. Tate in the Ouachita Circuit Court to recover the sum of $4,350, alleged to be due him on three promissory notes. On March 6, 1925, R. M. Tate and C. O. Tate brought suit in the Ouachita Chancery Court against James Gould and R. W. Gould, in which they asked for an accounting on account of a joint adventure or partnership in which the parties purchased improvement district bonds for their joint benefit, and to recover from the defendants the sum of $59,540.69, which plaintiffs claimed to be their part of the profits in said transactions, and for which they seek judgment against the defendants. By agreement between the parties the suit in the circuit court was transferred to the chancery court and consolidated with the suit pending there.

The record shows that R. M. Tate, C. O. Tate and J. M. Gould entered into a joint adventure for the purpose of dealing in road improvement and other improvement district bonds in the State of Arkansas. It is the contention of J. M. Gould that he signed the notes sued on in this case as an accommodation for the Tates, and that the money received by the Tates was used by them in speculating in oil leases in the State of Louisiana. On the other hand, it was the contention of the Tates that the money received on these notes was either profits already due or anticipated profits which would arise in the course of their dealing in Arkansas bonds. Evidence was introduced by the plaintiffs and the defendants to sustain their respective theories, which will be more particularly stated and discussed under an appropriate heading in the opinion. The evidence on the part of the Tates also shows that a much larger sum of money was due them as their part of the profits in dealing in road bonds than was due by them to Gould on the notes sued on. On the other hand, there is evidence in the record which tends to show that the parties made their profits, in some instances, in dealing in road bonds by entering into agreements with other bond brokers for the suppression of competition in bidding, and also by employing persons to unduly influence road commissioners to sell them the bonds, and also by advancing money to the road commissioners themselves, in some instances, for that purpose. The evidence on this branch of the case will also be more specifically stated and discussed in the opinion.

The court made a finding as follows: "That both the plaintiff and defendants are guilty of such iniquity as to bar their standing and recovery in a court of equity, as revealed from the testimony in this cause. That, by reason of plaintiff Gould bringing his suit at law and standing on his legal rights, he should recover the amounts due upon the two notes sued upon, viz., $4,350."

It was then decreed that the complaint of R. M. and C. O. Tate against J. M. Gould should be dismissed for want of equity. It was also adjudged that J. M. Gould

recover from R. M. Tate the sum of $4,350, with the accrued interest. R. M. and C. O. Tate have duly prosecuted an appeal to this court.

*Houston Emory, T. J. Gaughan, J. T. Sifford, J. E. Gaughan* and *Elbert Godwin,* for appellant.

*Rowell & Alexander,* for appellee.

Hart, C. J., (after stating the facts). The record shows that the complaint of R. M. and C. O. Tate against J. M. Gould for an accounting and division of the profits arising from their purchase and sale of Arkansas road bonds was dismissed in the chancery court because the evidence showed that all the parties were guilty of such illegal conduct in the course of the various transactions that they were not entitled to relief in a court of equity. At the outset it may be proper to state the principles of law which govern transactions of this character.

In the case of *Security Mutual Life Ins. Co.* v. *Little,* 119 Ark. 498, 178 S. W. 418, L. R. A. 1917A, 475, it was held that courts will not aid any party to a contract which is void as against public policy, either to enforce its provisions on the one hand or to permit the recovery of money paid in the performance of its conditions on the other. In that case it was held that certain contracts of insurance were void as against public policy because the beneficiary had no insurable interest in the parties whose lives were insured. Earlier cases of the court, recognizing the same principle of law as applied to varying facts, were cited and reviewed.

In *Mitchell* v. *Fish,* 97 Ark. 444, 134 S. W. 940, 36 L. R. A. (N. S.) 838, it was held that, although a contract of partnership between a man and a woman was tainted with illegality or immorality, yet if the contract has been executed by the voluntary acts of the parties and a division of profits agreed upon, the courts will enforce the settlement. In that case there was a relation of concubinage between the parties, and the court said that, although the partnership between them may have been illegally formed on account of the consideration for it being the living together of the parties illegally as husband and

wife, yet, where the contract had been completely executed and a division of the profits had been agreed upon, such a division of profits formed a new contract which the partner entitled to a share of such profits might enforce in the courts.

A leading case on the subject is that of *McMullen* v. *Hoffman*, 174 U. S. 639, 19 S. Ct. 839, 43 L. ed. 1117. In that case it was held that the contract was illegal, not only as tending to lessen competition at a public letting of a contract by the city of Portland, Oregon, but also because the parties had committed a fraud in combining their interests and concealing the same, and in submitting the different bids as if they were *bona fide*. It was expressly held that, in such a case, the court will not lend its assistance towards carrying out the terms of an illegal contract, nor will it enforce any alleged rights directly springing from such a contract. In that case the court recognized that there might be honest cooperation between public contractors, although it might prevent their rivalry and thus lessen competition. This was on the ground that joint adventures are allowed where the risk as well as the profit is joint and openly assumed. The reason is that, in such cases, the public may obtain the benefit of the joint responsibility, and the whole transaction is disclosed, and the public agent can weigh the merits of the bid and estimate the motives of the bidder. In discussing the question the court said:

"We must therefore come back to the proposition that, to permit a recovery in this case is, in substance, to enforce an illegal contract, and one which is illegal because it is against public policy to permit it to stand. The court refuses to enforce such a contract, and it permits defendant to set up its illegality, not out of any regard for the defendant who sets it up, but only on account of the public interest. It has been often stated in similar cases that the defense is a very dishonest one, and it lies ill in the mouth of the defendant to allege it, and it is only allowed for public considerations and in order the better to secure the public against dishonest

transactions. To refuse to grant either party to an illegal contract judicial aid for the enforcement of his alleged rights under it tends strongly towards reducing the number of such transactions to a minimum. The more plainly parties understand that, when they enter into contracts of this nature, they place themselves outside the protection of the law, so far as that protection consists in aiding them to enforce such contracts, the less inclined will they be to enter into them. In that way the public secures the benefit of a rigid adherence to the law.''

In the application of these well-settled principles of law to the facts in the case at bar, we are of the opinion that the chancery court properly held that the complaint of R. M. and C. O Tate against J. M. Gould for an accounting and division of the profits arising from their dealings in Arkansas road bonds should be dismissed for want of equity.

The record shows that J. M. Gould and R. M. and C. O. Tate entered into a joint adventure for the purpose of dealing in Arkansas road bonds. The testimony is very voluminous, and enters into the details of the various transactions between the parties in the course of their dealings, which extended over a period of several years. No useful purpose will be served by setting out the testimony in full or discussing it in detail. The record plainly shows that it was the intention of the parties to use illegal means to induce the commissioners to sell them the bonds of various road districts. In one instance it is shown that they agreed with a rival bond broker that, if he would not enter into competitive bidding with them for the bonds of a certain road district, they would share the profits with him. This fact was concealed from the commissioners of the road district. In other cases it was shown that money was paid to persons supposed to have influence over the road commissioners to induce them to sell the bonds of the road district to the parties to this suit. In still other instances it is inferable that money was furnished to those directly interested in selling the bonds to induce them to sell the bonds to the parties to

this suit. These various acts were known to the plaintiffs as well as to the defendants to this action. Consequently it presents such a state of facts as bring the various transaction with regard to the road bonds within the principles of law above stated. It was in contemplation of the parties that the transactions should be carried on by illegal as well as legal means, and distinct illegality runs through the whole course of their dealings and taints the whole joint adventure from beginning to end. Hence the chancery court properly held that the parties were not entitled to an accounting with respect to the alleged profits or to enforce their contract in any wise whatever in a court of equity.

It will be observed that the record presents an essentially different state of facts from that shown in *Mitchell* v. *Fish,* 97 Ark. 444, 134 S. W. 940, 36 L. R. A. (N. S.) 838. In that case the parties to the illegal transaction had fully performed their contract and had agreed upon the amount of profits due each one of the parties. Nothing remained to be done except for one of the parties to pay over to the other his share of the profits. The court said that, under the circumstances, a new contract had been entered into which was collateral to and not contaminated by the original contract. In the case at bar the very object of the suit is to secure an accounting between the parties, and the facts bring the case squarely within the principles of law above announced, which do not allow recovery where the contract sought to be enforced is void on account of being against public policy. Hence we are of the opinion that the transaction out of which the profits are alleged to have been derived in the present case was illegal and entered into for improper purposes, and a court of equity will leave the parties as it finds them.

Counsel for J. M. Gould seek to uphold the judgment in his favor against R. M. Tate, for the amount of the notes sued on, on the ground that this transaction was not tainted with the illegality of their dealings in road bonds. No rule of evidence is violated by admitting oral proof of the consideration for a promissory note for the

purpose of showing want or failure of consideration, or illegality of consideration. *Little v. Arkansas National Bank,* 105 Ark. 281, 152 S. W. 281.

Counsel for appellees rely principally on the testimony of J. M. Gould, which is as follows:

"Q. Do you or did you know for what purpose that money was borrowed on the two notes which you indorsed? A. No sir, I did not know that. Q. It was not in connection with your and Mr. Tate's business? A. No sir; Bob and Charley (Tate) told me they were in the oil business in Louisiana, and that they wanted that for that purpose. Not a dollar of it went into our business. They were pressed for money in Louisiana, and I indorsed their notes for them. My indorsement was purely an accommodation."

In this connection we call attention to the testimony of R. W. Gould, a son of J. M. Gould, who was a witness for his father. After testifying that his father and the Tates had entered into a contract whereby they settled the various road bond issues they were to participate in, he said that he remembered that, some time prior to this, R. M. Tate told his father that, if he would indorse some paper for him and help him pull out of a bad mess, he would waive all participation in any contract in which he was interested. Again, in his testimony, he speaks of times when his father went fully into the matter of undelivered road bonds with the Tates in which they were interested, and on account of which his father had indorsed Tate's notes in a large sum.

According to the testimony of R. M. Tate, these indorsements of his notes by J. M. Gould were to be met out of the profits which should arise in the various bond transactions. The various contracts with the road districts for the purchase of their bonds were taken in the name of Gould because he was better known in the bond market, and it was contemplated between the parties that Gould should reimburse himself out of the profits which should come into his hands from the purchase and sale of these various road bonds.

According to the testimony of Gould, a settlement was had between the parties at the time of the purchase and sale of the bonds of each road district. This was denied by R. M. Tate. According to his testimony, Gould then told them that no profits were derived from a group of road districts in Southwest Arkansas, and that, long afterwards, he discovered that Gould had made $20,000 out of the purchase and sale of bonds in this group of road districts. Gould denied the statement that he made money out of this group of districts.

Be that as it may, it is fairly inferable from the evidence in the case that Gould indorsed the notes of the Tates because they were associated together in the purchase and sale of Arkansas road and other improvement district bonds; and it was contemplated that he should be reimbursed or paid for signing these notes out of any proceeds arising from the sale of the bonds in which the parties were jointly interested which might come into his hands. This is shown by the testimony of R. W. Gould as well as by that of R. M. Tate. R. W. Gould testified that R. M. Tate had told his father that, if he would indorse some paper and help him pull out of a bad mess, he would waive participation in any contract in which he was interested. This testimony could have reference to the indorsement of no other notes than the ones sued on, for it does not appear that Gould indorsed any other notes of Tates. Thus, it will be seen that his indorsement of the notes was a matter growing out of their joint adventure in dealing in Arkansas road and other improvement district bonds. It does not matter what the Tates used the money for. That was not the question. We are only concerned with the question of whether or not his indorsement of the notes was a part of their joint adventure in dealing in Arkansas improvement district bonds, and, for the reasons above given, we are convinced that it grew out of and was a part of such transactions. In this view of the matter it does not make any difference that Gould brought suit at law. An illegal contract can no more be enforced at law than in

equity. This will be seen by reference to the case of *Mutual Life Ins. Co.* v. *Little,* 119 Ark. 498, 178 S. W. 418, L. R. A. 1917A 475, and the cases cited in it.

It is true that the other two cases cited in this opinion arose in the chancery court, but this was because an accounting was sought between the parties which gave jurisdiction to a court of equity. The principles announced apply with as much force in a court of law as in a court of equity. The principle equally applies that, where a contract is illegal or void as contrary to public policy, a law court as well as an equity court will leave the parties as it finds them.

The result of our views is that the chancery court erred in allowing J. M. Gould to recover against R. M. Tate for the amount of the notes sued on, and, for that error, the decree will be reversed, and the cause remanded, with directions to the chancery court to dismiss the complaint of J. M. Gould against R. M. Tate and C. O. Tate. In all other respects the decree of the chancery court will be affirmed. It is so ordered.