STURGIS *v.* WYLIE.

4-5192                                    120 S. W. 2d 571.

Opinion delivered October 24, 1938.

S. F. *Morton* and *Thomas E. Sparks,* for appellant.

*Franz E. Swaty* and *Glover & Glover,* for appellee.

GRIFFIN SMITH, C. J. The Bank of Carthage became insolvent November 22, 1930, its affairs were taken over by the State Bank Commissioner. Shortly thereafter 100 per cent. assessments were levied against stockholders, who were duly notified.

Of the $10,000 capital stock, appellee owned $500. Other members of her family owned an additional $1,000.

Marion Wasson, State Bank Commissioner, filed suit against appellee, and later filed an amended complaint. The defendant filed her answer, specifically denying such allegation.

The Dallas chancery court ordered all assets of the bank sold. July 23, 1935, appellant Sturgis purchased at the sale held in pursuance of the court order. His bid was $1,200.

January 6, 1936, Sturgis was substituted for the Bank Commissioner as plaintiff, and a non-suit was taken. May 26, 1936, a second suit was filed. Appellee answered, denying substantially as in the former action.

October 21, 1937, appellee filed an amendment to her answer, alleging that prior to the sale of assets she had, through Joe Wylie, her brother, discussed with plaintiff the proposed sale; that plaintiff gave assurances that if he became the purchaser he would not enforce collection of the assessments, and that because of such representations defendant, who with other members of her family had considered bidding for the property, refrained from so doing.

Appellant denied having had any conversation with appellee or with Joe Wylie in which such assurances were given. Wylie, however, testified that in the course

of the conversation appellant said: "I will assure you that I will not interfere with you. What I am after is the land and the timber on it, and that banking house for my office. I will not pursue these other matters. That suit up there and this other stuff are just worthless scraps of paper as far as I am concerned."

In response to the court's question directed to Joe Wylie, asking whether he had a definite understanding with Sturgis the morning of the day the assets were sold that if they (witness and his family) would refrain from bidding appellant would not prosecute the suit, Wylie said: "No, sir. He satisfied my mind that it wouldn't be necessary for me to go in that thing because he would not press the claims against us. . . . My mind was as thoroughly relieved as if he had signed forty papers, . . . I had the assurance from him that he would not press these matters. . . . I communicated this information to my sister, Julia Wylie, and to the rest of the family, and we rejoiced over it."

Errors complained of are: (1) That certain testimony prejudicial to appellant was admitted. (2) That there was no substantial evidence upon which the jury could base its verdict. (3) That the trial court abused its discretion in refusing to give appellant's requested Instruction No. 1, and in giving on its own motion certain oral instructions.

In his brief appellant says: "The only issue in this case is whether the plaintiff promised the defendant that if defendant would not bid at the sale of the assets, plaintiff would not attempt to enforce the assessments."

It is urged that J. A. McGuire was permitted to testify to acts of misconduct on the part of one of the liquidating agents; that the same witness was allowed to testify regarding the value of assets sold; that Joe Wylie was permitted to testify that the bank building, fixtures, etc., were carried on the books at $7,500; and that, although stock assessments were made against other parties, defendant was the only one who had been sued.

Appellant is correct in his position that testimony relating to misconduct of the liquidating agent was incompetent. However, it was not prejudicial.

As a circumstance tending to show that the agreement alleged to have been entered into in appellee's behalf was, in fact, made, evidence was admitted showing that other stockholders had not been sued. While the connection was somewhat remote, there was no error in allowing the testimony to go to the jury.

Instruction No. 1, refused by the court, would have required the jury to answer "yes," or "no," "whether the alleged agreement was entered into." The court had a right to refuse this instruction for the reason that the general verdict covered the same subject. It is discretionary with courts whether special verdicts shall be required, and exercise of such discretion will not be disturbed unless the discretion is abused. *Johnson* v. *Missouri Pacific Railroad Co.,* 149 Ark. 418, 233 S. W. 699. There was no abuse of discretion in the instant case.

As a general proposition agreements between several parties that one of them shall bid in his own name at a public sale or the letting of a contract, and shall share the profits with others, is against public policy and voidable, if either the intention, the effect, or the necessary tendency of the combination be to stifle or limit competition in the bidding. *Woodruff* v. *Berry,* 40 Ark. 251; *Taft* v. *Gould,* 175 Ark. 306, 299 S. W. 24. However, in *Lay* v. *Brown,* 106 Ark. 1, 151 S. W. 1001, a distinction was drawn between cases where the purpose is to stifle competition and those instances where the purpose is to protect one's own legitimate interests. To the same effect is § 392, page 450, of 13 Corpus Juris. See, also, footnote entitled, "Discussion of the Rule," at page 451, 13 C. J.

It is our conclusion that a question of fact was presented for the jury; that the incompetent evidence was not prejudicial; that the court did not abuse its discretion in refusing to require a special verdict, and that the issues were submitted under proper instructions.

The judgment is affirmed.