EVANDER, J.
TTSI Irrevocable Trust was the named owner and beneficiary of an insurance contract procured on the life of Verlee Ten-nant. After determining, at a summary judgment hearing, that TTSI did not have an insurable interest in Ms. Tennant’s life, the trial court held: (1) the life insurance policy was void ab initio, and (2) TTSI was not entitled to a refund of any premiums paid. TTSI appeals from the final summary judgment, contending that the trial court erred in denying its request for a return of premiums paid. We affirm. Where a party wrongfully procures a life insurance policy on an individual in whom it has no insurable interest, the party is not entitled to a return of premiums paid for the void policy.
In October 2004, insurance agent Paul W. Moses, II, filled out an application with ReliaStar Life Insurance Company to insure the life of then 85-year-old Verlee Tennant. Mr. Moses was unrelated by blood or law to Ms. Tennant. He had served as Ms. Tennant’s broker from approximately 1993 to 1996 and had traded some existing annuities on her behalf in the spring of 2004. In the fall of 2004, Mr. Moses sought Ms. Tennant’s permission to take out a policy on her life with himself named as the beneficiary. Ms. Tennant agreed to the arrangement. Mr. Moses had Ms. Tennant sign an application for a life insurance policy that would pay $370,912 in life insurance proceeds to the named beneficiary upon her passing.[1]
On the application, however, Mr. Moses did not list himself as the beneficiary. Rather, Mr. Moses designated “TTSI Irrevocable Trust, K.M. Kern, Trustee” as the owner and primary beneficiary of the policy. When asked in the application to describe the proposed policy owner’s relationship to the proposed insured, Mr. Moses wrote “Family Trust.” In fact, there was no relationship between Ms. Tennant and TTSI. The beneficiaries of the TTSI Irrevocable Trust were Mr. Moses[2] and his children. The trustee, K.M. Kern, had never met nor had any relationship with Ms. Tennant.
In June 2005, ReliaStar issued the policy. The premiums were paid by TTSI.
In 2008, Ms. Tennant received correspondence from ReliaStar which included a copy of her application for the subject policy. Ms. Tennant informed ReliaStar that she did not know Mr. Kern and did not have a family trust. ReliaStar thereupon conducted an investigation and ultimately cancelled the policy based on its conclusion there was no insurable interest between Ms. Tennant and TTSI and therefore the policy was void ab initio as contrary to public policy. ReliaStar also informed Mr. Moses that the current accumulated value of the policy would be used to offset ReliaStar’s costs in issuing the policy and to recoup the commission paid to Mr. Moses and that no funds would be remitted in connection with the termination of the policy.
In January, 2009, TTSI filed a 3-count complaint against ReliaStar for breach of contract, anticipatory breach of contract, and declaratory relief, requesting that the court require ReliaStar to reinstate the policy. ReliaStar answered the complaint *1150 and later moved for summary judgment based on the argument that the policy was void ab initio because TTSI never had an insurable , interest in Ms. Tennant’s life. At the trial level, TTSI argued that Ms. Tennant was a “key client” of Mr. Moses and therefore it had an insurable interest in Ms. Tennant’s life. The trial court rejected TTSI’s argument and determined that no insurable interest existed. See § 627.404, Fla. Stat. (2004). That ruling is not challenged on appeal.
Where the owner of an insurance policy lacks an insurable interest in the life of the insured, the policy is void ab initio because it is considered a “wagering contract” and contrary to public policy. See, e.g., Knott v. State ex rel. Guar. Income Life Ins. Co., 136 Fla. 184, 186 So. 788, 789 (1939) (“[I]t has been uniformly held that a contract of insurance upon a life in which the insurer has no interest is a pure wager, that gives the insurer a sinister counter-interest in having the life come to an end.”); Lopez v. Life Ins. Co. of America, 406 So.2d 1155, 1158 (Fla. 4th DCA 1981) (“Florida law requires that an individual contracting for insurance on the life of another have an insurable interest ... The obvious purpose of that requirement is to prevent so-called ‘wagering’ contracts.”), approved, 443 So.2d 947 (Fla.1983); Aetna Ins. Co. v. King, 265 So.2d 716, 718 (Fla. 1st DCA 1972) (“The public policy of this state renders an insurance policy invalid when the insured has no insurable interest in the property or the risk insured on the grounds that same constitutes a wagering contract.”); Atkinson v. Wal-Mart Stores, Inc., No. 8:08-CV-691-T-30TBM, 2009 WL 1458020, at *3 (M.D.Fla. May 26, 2009) (“Florida courts have long held that insurable interest is necessary to the validity of an insurance contract and, if it is lacking, the policy is considered a wagering contract and void ab initio as against public policy.”).
TTSI argues that notwithstanding the invalidity of the insurance policy, it is still entitled to a refund of the premiums paid. In support thereof, TTSI cites to Gonzalez v. Eagle Ins., Co., 948 So.2d 1 (Fla. 3d DCA 2006), Perlman v. Prudential Ins. Co. of America, Inc., 686 So.2d 1378 (Fla. 3d DCA 1997), and Diaz v. Fla. Ins. Guar. Ass’n, Inc., 650 So.2d 675 (Fla. 3d DCA 1995) for the proposition that where a policy is rescinded or declared void, a refund of premiums paid, in part or in whole, is required in order to return to the status quo. These cases are readily distinguishable. In each of these cases, a party sought to rescind an insurance contract because of an alleged fraud in the inducement. Rescission is an equitable remedy where the primary obligation is to undo the original transaction and restore the former status of the parties. Billian v. Mobil Corp., 710 So.2d 984, 990 (Fla. 4th DCA 1998). Moreover, rescission is an elective remedy and the party may, but is not obligated to, exercise its right to rescind the transaction. See, e.g., Towers v. Clarendon Nat’l Ins. Co., 927 So.2d 913, 914 (Fla. 2d DCA 2006).
By contrast, the present case does not involve a voidable contract. Rather, neither party could elect to give effect to the policy at issue because it was void at the outset. Furthermore, as a general rule, contracts that are void as contrary to public policy will not be enforced by the courts and the parties will be left as the court found them. See, e.g., Harris v. Gonzalez, 789 So.2d 405 (Fla. 4th DCA 2001); Castro v. Sangles, 637 So.2d 989 (Fla. 3d DCA 1994). We see no reason to depart from the general rule where, as in the instant case, the party seeking to enforce the contract is the only party who engaged in deceptive and misleading conduct at the time the contract was entered into. See also Sec. Mut. Life Ins. Co. v. *1151 Little, 119 Ark. 498, 178 S.W. 418 (1915) (where party enters into unlawful contracts for insurance policies on the lives of persons on which it had no insurable interest, contracts are unenforceable and party is not entitled to recover amounts previously paid to insurer).
AFFIRMED.
GRIFFIN and JACOBUS, JJ., concur.

. There is a factual dispute as to whether Ms. Tennant withdrew her consent prior to the submittal of the insurance application to Reli-aStar by Mr. Moses. The resolution of this factual dispute was unnecessary to the disposition of the summary judgment motion below or to this appeal.

. Mr. Moses is also an attorney licensed to practice law in the State of Florida. This court is forwarding a copy of this opinion to The Florida Bar for its consideration.