LITTLE *v.* ARKANSAS NATIONAL BANK.

Opinion delivered May 4, 1914.

1. BILLS AND NOTES—INNOCENT PURCHASER FOR VALUE.—Before one can be held to be a *bona fide* and innocent holder of commercial paper, it must appear that the paper was acquired without notice or knowledge of defenses, or circumsatnces which would put the purchaser on inquiry that such defenses existed. (Page 75.)

2. BILLS AND NOTES—INNOCENT PURCHASER—DUTY TO MAKE INQUIRY.— The purchaser of negotiable paper is not required to investigate as to the consideration for which the paper was given, and he has the right to assume that the paper is the legal and valid obligation of the maker, unless he has notice or knowledge to the contrary. (Page 76.)

3. BILLS AND NOTES—INVALIDITY—DEFENSE AGAINST INNOCENT PURCHASER.—The defense of invalidity is available against an assignee of a note who purchased the note with notice of the facts concerning the consideration given therefor; but not against an innocent purchaser for value before maturity of a negotiable note. (Page 77.)

Appeal from Benton Circuit Court; *J. S. Maples,* Judge; affirmed.

*Dick Rice* and *Jeff R. Rice,* for appellants.

1. This case was here on former appeal. 152 S. W. 281. The bank was not an innocent purchaser for value. 103 S. W. 232; 1 Pac. 579; 108 S. W. 1068; 64 Am. St. 327. The burden was on the bank to show it was a purchaser for value without notice. The notes were mere wagering contracts. 8 Cyc. 236; 3 S. W. 805; 1 Daniel, Neg. Inst. (2 ed.), § 198; 126 S. W. 114; 111 *Id.* 888.

2. The evidence fails to show that plaintiff was a *bona fide* purchaser without notice. 130 S. W. 162; 95 *Id.* 145; 12 Atl. 223; 25 N. E. 281; 36 *Id.* 551.

3. The notes are void under our statute, and the court erred in its charge to the jury. Kirby's Dig., § 3690; 152 S. W. 281; 1 Daniel, Neg., Inst., 170; 6 Wend. 615; 97 S. W. 353; 55 Pac. 306; 21 Ga. 195.

*B. R. Davidson,* for appellee.

1. There is no error in the court's charge, and the evidence shows the bank was an innocent purchaser. Berman, Neg. Inst., p. 62, § 56.

2.   The bank had no notice of any infirmity or defect.  7 Cyc. 943-4-5; 35 Ark. 146; 42 *Id.* 22; 61 *Id.* 81; 65 *Id.* 543; 69 *Id.* 140; 71 Fed. 489; 78 *Id.* 69; 81 Fed. 47.

3.   On the former appeal it was held the notes were not void in the hands of an innocent purchaser.  105 Ark. 281; 52 *Id.* 473; 81 *Id.* 440; 77 Ark. 103.

SMITH, J. ' Upon the former appeal of this case, the appellant here being the appellant then, the following statement of facts was made, in the opinion then delivered:

"Appellants executed to one J. O. Gunter two negotiable promissory notes, each for the sum of $837.10, due and payable three and six months, respectively, after date, and Gunter assigned the notes to appellee, a banking corporation doing business in the city of Fayetteville, Arkansas.  Appellee instituted this action to recover of appellants the amount of the two notes with interest. Appellants, for defense to the action, pleaded want of valid consideration for the execution of the notes sued on, alleging that Gunter was the soliciting agent for a certain life insurance company; that the notes were executed to him for the first annual premium on life insurance policies issued by said company on the lives of eighteen young men, the amount of the several policies of insurance to be payable on the death of the young men to Special School District of Rogers, Benton County, Arkansas; that neither the school district, nor any of these appellants, had an insurable interest in the lives of the men mentioned in the policies, and that said insurance contracts were void, and, consequently, the said notes given for premiums were without legal consideration.  It is further alleged that appellee had full notice of the above stated facts when it purchased the notes from Gunter, and was therefore not an innocent purchaser for value."

The court below, on the former trial, struck out the allegations of the answer concerning the consideration for the notes, leaving in the answer only the allegations of payment of the notes by the school district, and, on that issue a verdict was returned in favor of the bank.

Upon the appeal from the judgment rendered upon that verdict it was held that the notes given for the insurance premium were invalid because the policies were wagering contracts, and as such against public policy.

Upon the remand of this case it was shown without dispute that the notes were executed for the consideration recited in the answer. The evidence upon the part of the bank, however, was to the effect that the notes were discounted at the rate of 8 per cent per annum, and the proceeds of the notes thus discounted were placed to the credit of the account of Gunter with the bank, and that Gunter at the time drew a small check against this deposit, and very soon afterward drew a check in favor of the insurance company, for its portion of the premium, which was about 70 per cent of the face of the notes. Gunter testified that he advised the president of the bank what the consideration was, and that the bank had full knowledge of the transaction before the notes were purchased; but that statement was flatly contradicted, and the jury has seen fit to accept the statement of the president of the bank.

Appellants insist that a verdict should have been directed in their favor, and in support of this position they cite cases holding that when a bank simply discounts a note and credits the amount thereof to the endorser's account without paying to him any value for it, the transaction does not constitute the bank a purchaser for value of the note. This appears to be a correct statement of the law, but this issue does not appear to have been raised in the court below and no specific instruction to that effect was asked. Moreover, it appears to us it would have been abstract had it been given. There is a very close question of fact as to whether or not the officers of the bank knew what the consideration of the notes was before purchasing them; but there appears to be no real question that the bank paid full value for the notes, and that within a short time, and before the maturity of the notes, or either of them, Gunter drew checks against this deposit for the larger part of it, and all of it may have

been so withdrawn so far as the proof shows to the contrary. But, of course, the fact that it paid value for the notes would not entitle the bank to collect them from the maker, if it was not an innocent purchaser for value, before maturity. That question appears to have been fairly submitted to the jury, although an instruction numbered 5, asked by appellants, which might well have been given to the jury, was amended by striking out the latter part of it. Appellants strongly complain that the action of the court in not giving the fifth instruction as requested was error which calls for reversal of the case. The portion of the instruction stricken out was to the effect that the bank must have purchased the notes without notice or knowledge of their infirmity or of circumstances which would have put it upon inquiry, and which, if followed up, would have led to the knowledge of the facts. But the court gave the following instruction: "The court instructs the jury that before one can become a *bona fide* and innocent holder of commercial paper, it must appear that it was acquired without notice or knowledge of defenses, or circumstances which would put him on inquiry that such defenses existed." The instruction given embodied substantially the statement of law contained in the part of the fifth instruction which was stricken out, and we think no prejudice resulted to appellants on that account. Appellants complain of the action of the court in giving the following instruction:

"No. 2. I charge you that the notes sued on are commercial paper under the law and as such are transferrable by the payee, and when offered for sale by the payee before they are due, the party to whom that are offered is not required to investigate as to the considerattion or for what the notes were given, and has a right to assume that they are legal and valid obligations of the parties executing the notes unless he has notice or knowledge to the contrary."

We think the instruction was not an improper one. In the case of *Winship* v. *Merchants Natl. Bank,* 42 Ark. 22, certain negotiable promissory notes were taken by an

agent to himself for debts due his principal, and before their maturity they were transferred to a bank as security for advances made to the agent, the bank making the advances on them before maturity, in good faith, in the usual course of business and without notice of the principal's equity. The principal sued the bank for the amount of the notes, and in the opinion in that case it was said: "Counsel for appellants contends that the bank having received the notes merely by way of security for a debt, is not entitled to be protected as a *bona fide* holder. Our reply to this is, that the notes were in form negotiable; that they were transferred to the bank before maturity; that the bank received them in good faith and in the usual course of business, and is consequently unaffected by equities of which it had no knowledge. The facts that Camp was the payee of the notes, and that they were in his possession, were *prima facie* evidence that they were his property; and without notice to the contrary the bank had a right so to treat them, and was under no obligation to inquire whether they were held by him as agent or as owner." So here, if the bank had no knowledge or notice, it was under no duty to inquire what the consideration for the notes was. Other instructions told the jury that if the bank knew what the consideration was, or had notice of such circumstances as should have put it upon inquiry, that it was not an innocent purchaser, and there was no conflict between the instructions. This instruction numbered 2 only dealt with the right of a bank to purchase commercial paper where it has no notice, or knowledge, of any infirmity in it, and it correctly declares the law with reference to the purchase of such paper. This instruction does not undertake to deal with the question of the burden of proof and of the bank's duty to show that it was in fact an innocent purchaser.

Appellants further insist that a verdict should have been directed in their favor for the reason that the notes sued upon are void under section 3690, of Kirby's Digest,

and that whenever a statute declares a note or other contract void, they are, and must be so, in the hands of every holder. We need not discuss the application of that section of the Digest to the facts of this case for the reason that the law of this case, on that question, was settled in the opinion on the former appeal, where it was said: "The defense (of invalidity) is available against an assignee of a note who purchased with notice of the facts concerning the consideration; but not against an innocent purchaser for value before maturity of a negotiable note." *Clark* v. *Hershy,* 52 Ark. 473; *Rankin* v. *Schofield,* 81 Ark. 440. That this is the law of this case was recognized by appellants in the instruction given at their request and numbered 3, which reads as follows:

"No. 3. The court instructs the jury that the court means by the term 'insurable interest' to be such an interest arising from the relation of the party obtaining the insurance, either as a creditor of, or surety of, the assured, or from the ties of blood or marriage to him as will justify a reasonable advantage or benefit from the continuance of his life, and that in the absence of any ties of blood or marriage between the beneficiary in the life insurance policy and the person whose life is insured, or of some contractual relation between them by reason of which damage may result to the beneficiary from the death of the party whose life is insured, that such insurance policies and notes given for the premiums thereon are void except in the hands of an innocent purchaser for value before maturity without notice."

Other questions are presented in the briefs, but we find it unnecessary to discuss them. The case presents almost entirely a question of fact, and that question was submitted to the jury under instructions declaring the law, as we have here stated it to be, and the judgment is therefore affirmed.