Live Stock State Bank v. Forrest City Grocer
Company.

Opinion delivered December 1, 1924.

1.  BANKS AND BANKING—DEPOSIT OF DRAFTS—EVIDENCE.—In an
    action by a buyer of hay against the seller, in which the proceeds
    of drafts for the hay were garnished by the seller, and an inter-
    vening bank claimed the proceeds, testimony that the bank gave
    the seller credit for the face of the drafts and permitted the seller
    to check against the deposit was admissible.

2.  EVIDENCE—PAROL EVIDENCE CONCERNING WRITING.—In an action by
    a buyer of hay, in which the proceeds of drafts for hay were
    garnished, and the bank with which the seller had deposited the
    drafts intervened, claiming the proceeds thereof, it was com-
    petent for intervener to show by parol evidence how and for what
    purpose it acquired the drafts; and it was error to charge the
    jury that the contract consisted of the drafts and deposit slips
    and that it could not be varied by parol testimony.

3.  BANKS AND BANKING—EVIDENCE AS TO OWNERSHIP OF DRAFTS.—
    Under Crawford & Moses' Dig., §§ 7796, 7815, relating to negotia-
    tion and transfer without indorsement, in an action by a buyer
    of hay against the seller, in which the proceeds of drafts drawn
    to pay for the hay were garnished, evidence as to ownership of
    proceeds thereof by intervening bank with which the drawer had
    deposited such drafts, neither drawn to such bank nor indorsed
    to it, held sufficient to go to the jury on the question whether the
    bank was the absolute owner of the draft.

Appeal from St. Francis Circuit Court; *E. D. Robert-
son,* Judge; reversed.

*W. J. Lanier* and *Stubenrauch & Hartz,* for appel-
lant.

Instruction 1A given by the court was in total dis-
regard of the bills of lading, which were indorsed and
transferred to appellant for full value, with the drafts
attached and an inseparable part thereof.  There was no
attempt to vary the terms of either the two deposit slips
or drafts; but appellant assuredly had the right to
explain the circumstances surrounding the execution of
both.  It had purchased the drafts and was entitled to the
proceeds thereof. 90 Ark. 439; 64 Ark. 224; 96 S. W. 1051;
79 Ark. 356; Ray on Negligence of Imposed Duties of
Freight Carriers, § 25; 120 Ark. 491.  Appellant having

purchased the drafts, it was entitled to an instruction to the effect that, even though it had, on the 12th day of May, 1923, on deposit money belonging to the Midwest Hay Company, that would not entitle the plaintiff to judgment against appellant. 107 Ark. 603; 124 Ark. 536, and cases cited; 46 Ark. 537; 48 Ark. 267; 127 Ark. 545; 113 Ark. 72; 101 Ark. 281; 48 Ark. 454; 147 Ark. 319.

. *C. W. Norton,* for appellee.

The drafts were not indorsed by Midwest Hay Company, though drawn to its order. This fact is not only a strong circumstance indicating that the bank's receipt of the drafts was as a collecting agent merely, but it also leaves the legal title to the paper in the payee, without regard to what the intention of the parties may have been. C. & M. Dig., §§ 7796-97; 160 Ark. 421.

SMITH, J. The testimony in this case is sufficient to support a finding that the Midwest Hay Company, a copartnership engaged in selling hay and grain in Kansas City, was indebted to the Forrest City Grocer Company. While so indebted, the grocer company ordered two cars of hay from the hay company. These cars were shipped from Kansas City on May 3 and May 4, and in due course reached Forrest City.

The bills of lading were made in the name of the hay company, and were indorsed by it. Separate drafts were drawn by the hay company for each car of hay, and the drafts were identical, except as to date and amount. The draft covering the first car of hay reads as follows: "Midwest Hay Company No. 5571. Kansas City, Mo., May 3, 1923. On demand pay to the order of Midwest Hay Company $312.33, three hundred twelve and 33/100 dollars, with exchange. Midwest Hay Company, Thos. M. Brandon, Jr. To Forrest City Grocer Co., Forrest City, Ark. Accept original paid freight bill as part payment." There was stamped on the back of each draft, with a rubber stamp, the following indorsement: "Pay to the order of any bank or banker. Previous indorsements guaranteed. Live Stock State Bank, Kansas City, Mo., May 4, 1923." On the face of each

draft the following notation was stamped: "Hold draft until arrival of car. Documents attached to be delivered only on payment of draft." The document attached to each draft was the bill of lading for the car of hay, to collect the price of which the draft was drawn. These drafts, with bills of lading attached, were sent by the Live Stock State Bank, of Kansas City, hereinafter referred to as the bank, to the First National Bank of Forrest City.

Upon the arrival of the cars of hay in Forrest City, the grocery company paid the drafts, took up the bills of lading, and unloaded and stored the hay, and commenced suit against the hay company for the debt due it, and garnished the proceeds of the drafts in the hands of the First National Bank of Forrest City as the property of the hay company.

The suit was begun in the court of a justice of the peace, and the hay company made no defense, and judgment was rendered against it by default, and no appeal was prosecuted by the hay company from that judgment. The bank, however, intervened in the justice court, and alleged that it was the owner of the proceeds of the drafts, and it appealed to the circuit court from a judgment adverse to it.

Upon the trial in the circuit court before a jury the following testimony was offered: It was shown that the hay company was a depositor and customer of the bank, and carried an active account there. The first draft was deposited on May 3 and the second on May 4, and each draft was deposited along with a number of other drafts. Each deposit was made on a deposit slip, which contained, at its top, the following recitals: "Out of town items credited subject to final cash payment. This bank will observe due diligence in its endeavor to select responsible agents, but will not be liable in case of their failure or negligence or for loss of items."

The officers of the bank testified that these deposits were made in the usual course of business, and that the bank became the absolute owner of each draft upon its

deposit; that the bank gave the hay company full credit for the face of the draft, and permitted the hay company to check against the deposit, as would have been done had the deposit been in cash. This was the practice observed with all solvent depositors and customers, although it was understood that, if any item so deposited was not collected, it was charged back to the account of the depositor. The hay company became insolvent and ceased to do business with the bank, and the account was inactive after May 8, at which time the hay company's balance was $105.30, and this sum was checked out on June 1, thereafter.

Objection was made by the plaintiff grocer company to the admission of the testimony showing the circumstances under which the bank came into possession of the drafts. But this testimony was properly admitted. After admitting this testimony, the court gave, over the objection of the bank, the following instruction: "No. 1A. The contract between the Midwest Hay Company and the Live Stock State Bank with regard to these drafts consists of the drafts themselves and the two deposit slips. This contract cannot be varied by parol testimony."

There was a verdict and judgment for the grocer company, from which is this appeal.

The instruction set out above was erroneous, and the judgment must be reversed on that account. It was competent for the bank to show how and for what purpose it acquired the drafts, whether, when they were deposited, they were received merely for collection or as an absolute deposit of money, and the effect of this instruction was to exclude the testimony on the part of the bank tending to show that it did not receive the drafts for collection merely, but had received them as an absolute deposit of money.

It is insisted on behalf of appellant bank that the judgment of the court below should be reversed and judgment rendered here in its favor, for the reason that the undisputed testimony shows that it received the

drafts as deposits of money and not for collection merely. We do not think, however, that this conclusion, and no other, must be drawn from the testimony in this case. This case is in many respects similar to the very recent case of *Merchants' Bank of Kansas City* v. *Searcy Wholesale Grocery Co., ante* p. 153, in which the law of the subject was declared. But a very important distinction is that, in the case cited, the draft was drawn to the bank itself, and the bank was there attempting to collect the draft for its own account. In the instant case the drafts were not drawn to the bank which remitted for collection, nor were they indorsed to it. Indeed, the drafts were not indorsed at all. Sections 7815 and 7796, C. & M. Digest; *Johnson* v. *T. M. Dover Merc. Co.,* 164 Ark. 371.

In the case of *Cox Wholesale Grocery Co.* v. *National Bank, etc.,* 107 Ark. 601, the court quoted as follows from the case of *Burton* v. *United States,* 196 U. S. 283: "When a check is taken to a bank, and the bank receives it and places the amount to the credit of a customer, the relation of creditor and debtor between them subsists, and not that of principal and agent." And from the case of *Taft* v. *Bank,* 172 Mass. 363, the court quoted as follows: "So when, without more, a bank receives upon deposit a check indorsed without restriction, and gives credit for it to the depositor as cash in a drawing account, the form of the transaction is consistent with and indicates a sale, in which, as with money so deposited, the check becomes the absolute property of the banker." After approving the law as thus stated, the court said, in its application to the facts of that case, that there was nothing in the record of that case to contradict the fact that the bank had become the absolute owner of the check, and that the only liability of the drawer was upon his indorsement in case the check was not paid. But it was there also said: "Of course, it would have been competent to prove that, notwithstanding the indorsement, the check was delivered merely for collection."

Here the bank admitted that it would have charged the drafts back to the account of the hay company if that

company had not become insolvent and had not transferred its account to another bank; but the reservation of this right, pursuant to the custom of banks so to do, would not divest the bank of its character as owner, if there was nothing else in the case to contradict the testimony of the officials of the bank. But there were other circumstances in evidence tending to refute this testimony. The drafts were not indorsed by the hay company; there was nothing on them to indicate the bank's ownership; there was an indorsement on them which authorized the collecting bank to allow a credit for the freight, which was an unknown sum when the drafts were deposited in Kansas City. It is true, the bank received them on a deposit slip which gave credit for their face, but it was known and understood that a credit for a then unknown amount would be allowed. The recitals on the deposit slips would indicate that the items out of town were received only for collection, and that the bank's relation to the drafts was that of an agent, whose responsibility was limited to the selection of another reliable agent to consummate the collection. Of course, this recital was subject to explanation in a particular case, but it is a circumstance to be considered in determining what, in fact, was the bank's relationship to the drafts. The bank officials admitted that, although it was their custom to credit the account of any customer with the face of any draft or other item deposited, they yet reserved the right, in cases of irresponsible depositors, to treat their relation to the depositor as that of agent, instead of that of debtor.

Under the facts stated, we think there is a question for the jury as to the bank's absolute ownership of the drafts; but, for the error in giving the instruction set out above, the judgment must be reversed, and the cause will be remanded for a new trial.