GUARANTY BANK & TRUST COMPANY *v.* DAVIS.

Opinion delivered January 18, 1926.

1. BANKS AND BANKING—OWNERSHIP OF DRAFT.—Where a draft was drawn by a seller on the buyer in favor of a bank for the price of a shipment, the draft became the property of the bank when it credited the amount of the draft to the seller's checking account, and the proceeds of the draft were not subject to garnishment by the buyer in an action against the seller while such proceeds were in the hands of another bank to which the payee bank had sent it for collection.

2. BANKS AND BANKING—OWNERSHIP OF DRAFT—EVIDENCE.—Where the seller of goods drew a draft for the purchase money in favor of a bank, which credited him with the amount, and the buyer, after paying the draft, sought to garnish the proceeds of the draft in the hands of the bank's agent, the fact that the seller subsequently endeavored to effect a settlement and stop the litigation did not tend to prove that the draft was accepted by the bank for collection merely.

3. BANKS AND BANKING—OWNERSHIP OF DRAFT—EVIDENCE.—Where a draft drawn by a seller of goods on its face became the property of the bank in whose favor it was drawn, affirmative proof that the bank accepted it as such, and not for collection merely, would not be overcome by proof of a custom of banks in the locality to accept such drafts for collection merely.

Appeal from White Circuit Court; *E. D. Robertson*, Judge; reversed.

*W. D. Davenport*, for appellant.

*Brundidge & Neelly*, for appellee.

McCULLOCH, C. J. Appellee, who was plaintiff below, and who is a resident of White County, Arkansas, purchased a carload of corn from L. D. Jones, of Memphis, Tennessee. The negotiations between the parties were by written correspondence, and the corn was to be of a certain quality, or grade, at the stipulated price of $1.10 per bushel. Jones shipped the car of corn to his own order at Pangburn, Arkansas, on a bill of lading directing notice to appellee, and drew a draft on appellee with the bill of lading attached, the draft being payable to appellant, a banking institution in Memphis. Appellant forwarded the draft, with bill of lading attached, to a bank at Pangburn for collection. Appellee paid the draft, took up the bill of lading and unloaded the corn, which was, according to the evidence, found to be of very low grade and practically worthless. While the funds were still in the hands of the local bank, appellee sued Jones for the amount paid and caused a garnishment to be issued and served on the local bank. Jones was summoned by publication of warning order, but made no defense. Appellant appeared and intervened, claiming the fund as owner, and, on the trial of the issue between

appellee as plaintiff and appellant as intervener, there was a verdict in favor of appellee. Appellant asked for a peremptory instruction on the ground that, according to the undisputed testimony, it was the owner of the draft and the funds collected thereon, but the court refused to give the instruction, and, on the contrary, submitted to the jury the issue whether or not appellant was the owner of the draft or merely received it for collection.

We have carefully considered the evidence and reached the conclusion that the court erred in holding that there was any issue of fact to submit to the jury concerning the ownership of the funds in controversy. The facts of the case bring it squarely within the decision of this court in *Cox Wholesale Grocery Co.* v. *National Bank of Pittsburg,* 107 Ark. 601, and *Merchants' Bank of Kansas City* v. *Searcy Wholesale Grocer Co.,* 166 Ark. 153.

It will be noted that the draft was drawn by Jones in favor of appellant, and this constituted a transfer of the title to the proceeds of the draft when collected. In other words, the transaction on its face was a sale of the proceeds and not a delivery of the draft for collection, and in this respect the case is identical with *Merchants' Bank of Kansas City* v. *Searcy Wholesale Grocer Co., supra.* The question therefore is whether or not there is any evidence in the case to show that the effect of the transaction was other than that expressed on the face of the draft itself. The burden of proof was on appellee to make such proof.

Appellant's cashier, L. H. Hume, testified by deposition concerning the draft and its delivery to appellant by Jones in the course of business between appellant and Jones. He testified that the draft was delivered to appellant in regular course of business for discount and credit, and that this had been the regular course of business between appellant and Jones for many years, but that, in addition to this, Jones had a line of credit on his

own account. The witness testified that this draft and others under like circumstances were credited to the checking account of Jones, and that the discount was twenty-five cents per $100, and that in case of a delay of more than ten days there was a charge of six per cent. interest for the period of delay. The witness testified that this method of doing business was classed in banking circles as a "commodity loan," and that appellant has quite a number of firms doing business on that basis. This testimony is not contradicted, and there is certainly nothing in it to overcome the regularity of the transaction, so far as the face of the draft is concerned, as a transfer of the funds. The witness testified that this draft and those like it were discounted by the bank, and this entirely negatives the idea that the draft was received merely for collection.

Counsel for appellant rely, as evidence that the draft was merely taken for collection, on the statements of the witness that such transactions constituted what is termed in banking circles a "commodity loan," but those statements or concessions of the witness—if they may be so termed—have no tendency to show that this draft and others similar to it were taken as collection items and not on transfer and sale. They also rely upon the statement of the witness that Jones had a credit arrangement with the bank "covering the discount of his bill of lading items, and also an additional line of credit upon his own paper up to the amount of $5,000." This statement does not show that the draft was accepted merely for collection; on the contrary, it is in accord with the other statements of the same witness, who said that this draft was not taken for collection, but was discounted the same as if it was a note, and that Jones had "an additional line of credit upon his own paper" up to a certain amount.

There is testimony to the effect that, after this suit had been instituted, Jones called appellee over the telephone from Memphis, and that they had a conversation

in an effort on the part of Jones to effect a settlement and stop the litigation, and Mr. Hume in his testimony admitted that he had had some conversation with Jones about taking up the matter of settlement with appellee. Learned counsel for appellee insist that this testimony has some probative force as tending to show that the draft was not accepted by appellant as an outright purchase but merely for collection. These matters, as well as the statement of Hume that upon non-payment of the draft it would have been charged back, were all covered by our decision in *Merchants' Bank of Kansas City* v. *Searcy Wholesale Grocer Co., supra,* and that case is in every respect decisive of the case against the contention of appellee. In that case we said:

"The fact that appellant referred the claim of appellee to the drawer of the draft to determine whether or not a credit should be allowed does not change the effect of the draft being drawn in favor of appellant and credited to the account of the defendant. Notwithstanding the fact that the draft became the absolute property of appellant as the party in whose favor it was drawn, yet the defendant was liable to appellant as drawer if the draft was not paid. Therefore the act of appellant in consulting the drawer or in carrying out the wishes of the drawer did not concede that the draft was not its absolute property."

The case cited above was referred to and discussed in the later case of *Live Stock State Bank* v. *Forrest City Grocer Co.,* 166 Ark. 474, and there was a distinction found in the case then under consideration, in the fact that the draft in the last case was not drawn in favor of the appellant, hence the transaction was not, on its face, a transfer of the title to the funds.

Counsel for appellee rely upon our decision in *Collins County Natl. Bank* v. *Laser Grain Co.,* 130 Ark. 396, but there is a clear distinction between that case and this, in that the draft involved there showed on its face that it was delivered for collection, and there was other proof

adduced in the case which tended to show that it was actually received by the appellant for collection and not by purchase.

The judgment of the circuit court is therefore reversed, and the cause remanded for a new trial.

McCULLOCH, C. J., (on rehearing). In the judgment of this court the cause was remanded for a new trial, instead of rendering judgment here on the undisputed evidence in favor of appellant. This course was pursued on the theory that appellee might be able to produce additional evidence tending to show that the draft was received by appellant from its customer merely for collection and not as the absolute owner. Appellant now moves for modification, so as to obtain judgment here for recovery of the amount of the draft. Appellee responds to the motion and states that he can, on a retrial of the issues, adduce testimony to the effect that a general custom existed in the city of Memphis among the banking institutions that drafts of this character were taken for collection. No other proof is offered. We do not think that is sufficient to help appellee's defense, for the prevalence of such a custom could not affect this particular transaction, where the draft on its face became the property of the drawee, and the proof shows affirmatively that appellant received it as such. *Southern Coal Co.* v. *Searcy Transfer Co.,* 152 Ark. 471.

No useful purpose will be served by remanding the cause for a new trial, for, if it comes back here on appeal from judgment in appellee's favor with no other testimony except that now in the record and the additional testimony offered, we would reverse the judgment as being unsupported by legally sufficient evidence, so the motion of appellant is sustained, and final judgment will be rendered here in appellant's favor for recovery of the funds in dispute.