KANSAS CITY SOUTHERN RAILWAY COMPANY *v.*
FIRST NATIONAL BANK OF FT. SMITH.

## Opinion delivered June 13, 1927.

1. BILLS AND NOTES—BANK RECEIVING CHECK FROM INSOLVENT BANK.
   —A bank whose title to a check received from a correspondent
   bank was defective because of the fraud of the correspondent
   bank in issuing its exchange in payment therefor during insol-
   vency, was not entitled to recover from the indorser after pay-
   ment had been stopped and the check protested, on a mere show-
   ing that the insolvent bank was credited with the amount of the
   check before knowledge of its insolvency, unless plaintiff bank
   actually parted with value.

2. BILLS AND NOTES—CHARGING BACK CHECK OF INSOLVENT BANK.—
   A bank which received a check from a correspondent bank by
   negotiation, crediting the amount thereof, could, on learning of
   correspondent bank's insolvency, charge the amount back and
   return the check to the examiner while the bank had possession
   of the check, or after the check was returned protested.

3. BILLS AND NOTES—RIGHT TO CHARGE BACK THE CHECK OF INSOLVENT
   BANK.—A bank which paid out checks received from an insolvent
   bank, and charges the amount to the account of an insolvent bank,
   after knowledge of its insolvency, does so at its own peril, as
   respects its claim of *bona fide* purchase by crediting proceeds of
   the check.

4. TRIAL—ABSTRACT INSTRUCTIONS.—An instruction which assumes
   a state of facts not supported by the evidence is erroneous.

5. BILLS AND NOTES—FRAUDULENT CHECK—BURDEN OF PROOF.—A bank
   whose title to a check was defective because of fraud perpetrated
   by correspondent bank, of which the check was received, had
   the burden, in an action against the indorser, to prove that it
   acquired title as holder in due course.

6. BILLS AND NOTES—FRAUDULENT CHECK.—A bank which purchased
   a check with exchange drawn by it on another bank at the time
   when the drawer bank was hopelessly insolvent was guilty of
   fraud on an indorser, rendering the title of the drawer bank to
   the check, which it transferred by the negotiation, defective as
   respects the burden of proof.

Appeal from Sebastian Circuit Court, Fort Smith
District; *John E. Tatum,* Judge; reversed.

*James B. McDonough, Jr., Joseph R. Brown* and
*James B. McDonough,* for appellant.

*Daily & Woods,* for appellee.

McHaney, J.   On April 12, 1924, the George F. Collins Company, an Oklahoma Corporation, being indebted to appellant in the sum of $776.12, on account for freight, drew its check on the American National Bank of Sapulpa, Oklahoma, for said amount, payable to appellant, and delivered same to it.   On April 21, 1924, appellant's agent at Poteau, Oklahoma, took this check and others to the First National Bank of Poteau, and purchased exchange in the form of a draft for the total amount of said checks, on the Drovers' National Bank of Kansas City, Mo., payable to appellant, and remitted same to appellant's treasurer at Kansas City.   On April 22, 1924, the First National Bank of Poteau closed its doors on account of insolvency, and a national bank examiner took charge of its affairs, and, when said draft was presented to the Drovers' National Bank in Kansas City, payment was refused on account of the failure of the First National at Poteau. The check of the George F. Collins Company and others were forwarded for collection and credit to the appellee, correspondent of the First National at Poteau, on April 21, where it was received and credited to the account of the Poteau bank on the morning of April 22, at a time prior to the receipt of information by appellee of said failure.   About one or two o'clock on said date, after the receipt and credit of said check, appellee was officially notified by wire, by the examiner in charge, of the Poteau bank's failure, and instructed not to credit or charge any additional items to its account. Appellee at this time still had said check of the George F. Collins Company in its possession, indorsed by appellant and the Poteau bank, and, instead of charging same back to Poteau and returning same to the examiner, it forwarded same to its correspondent in Oklahoma City, who, in turn, sent it to the bank on which it was drawn in Sapulpa, where payment was refused, the check protested, account payment stopped by the drawer at the request of appellant.   Said check then went back the route from whence it came, dishonored, and finally reached appellee, whereupon it brought suit against the

George F. Collins Company, as drawer, and appellant as indorser, of the check to recover the amount thereof. The Collins Company deposited the amount in court, and was discharged. A trial resulted in a verdict and judgment against appellant, and it has appealed.

The first assignment of error urged for reversal of this case is that the court erred in giving appellee's instruction No. 2 over appellant's objection, which instruction is as follows:

"If you find that the check which has been introduced in evidence was indorsed and delivered by the First National Bank of Poteau, Oklahoma, to plaintiff in due course of business, and that the Poteau bank received credit therefor on its account with plaintiff, your verdict will be for the plaintiff; unless you further find that the plaintiff had knowledge of the fact, if it be a fact, that the said Poteau bank was insolvent at the time the check was deposited by defendant, the Kansas City Southern Railway Company, and knew that the Poteau bank had perpetrated a fraud on defendant, or that plaintiff had knowledge of such facts as would render the taking of the check an act of bad faith."

We agree with appellant that this instruction is erroneous. It will be noticed that it permits a recovery against appellant from the mere fact that it credited the amount of this check to the account of the Poteau bank, provided it had no knowledge of the insolvency of the Poteau bank at the time it acquired the check from appellant. In addition to this, it must have parted with value to the amount of the credit, else it could not be hurt, had lost nothing, and would be in no position to maintain an action against appellant for the amount of the check. It is true, as was said in *Cox Wholesale Grocery Co. v. The National Bank of Pittsburgh,* 107 Ark. 601, 156 S. W. 187, that, "when a check is taken to a bank, and the bank receives it and places the amount to the credit of the customer, the relation of creditor and debtor between them subsists, and not that of principal

and agent;'' but it is also true that, if the check which has
been credited in the depositor's account is unpaid, the
bank has the legal right to charge the amount of it back
to the depositor's account, where a sufficient credit still
remains to cover it. By merely entering credit in the
depositor's account the bank has parted with nothing of
value. Of course, if the depositor checks out the amount
of his credit in the bank, then the bank has parted with
value and becomes a holder in due course for value of
the instrument. In the case of *Little* v. *Arkansas
National Bank,* 113 Ark. 72, 74, 167 S. W. 75, 76, this
court said:

''Appellants insist that a verdict should have been
directed in their favor, and, in support of this position,
they cite cases holding that, when a bank simply dis-
counts a note and credits the amount thereof to the
indorser's account without paying to him any value for
it, the transaction does not constitute the bank a pur-
chaser for value of the note. This appears to be a cor-
rect statement of the law, but this issue does not appear
to have been raised in the court below and no specific
instruction to that effect was asked.''

While this statement may be *obiter* as to that case,
it appears to us that it is a correct statement of the law.
In the case of *Ala. Groc. Co.* v. *First Nat. Bank,* 158 Ala.
143, 48 So. 340, 132 Am. St. Rep. 18, it is said:

''So long as that relation (relation of debtor and
creditor) continues, and the deposit is not drawn out,
the bank is held subject to the equities of the prior par-
ties, even though the paper has been taken before
maturity and without notice.''

In *City Deposit Bank* v. *Green* (Ia.), 103 N. W. 96,
it is said:

''By giving credit to the indorser of the note on his
deposit account, the bank, in effect, agrees to pay him
that amount of money on demand by check or order,
and parts with nothing of value. When it receives notice
of defenses to the note, it is still in a situation, provided

the amount thus credited has remained undrawn by the depositor, to return the note to him, and cancel the credit."

In the case of *Union National Bank* v. *Winsor,* 101 Minn. 470, 112 N. W. 999, 119 Am. St. Rep. 641, Ann. Cas. 204, it is said:

"When a bank discounts paper for a depositor, and gives him credit upon its books for the proceeds of such paper, it is not a *bona fide* purchaser for value so as to be protected against infirmities in the paper, unless, in addition to the mere fact of crediting the depositor with the proceeds of the paper, some other and valuable consideration passes. Such a transaction simply creates the relation of debtor and creditor between the bank and the depositor, and, so long as that relation continues and the deposit is not drawn out, the bank stands in the same position as the original party to whom the paper was made payable. By giving credit to the indorser on his deposit account the bank, in effect, agrees to pay him that amount of money on demand by check, or order, and parts with nothing of value. As long as the amount thus credited remains undrawn by the depositor, the bank, if it receives notice of the fraud, is still in a position to return the note to the depositor and cancel the credit."

In the case at bar appellee had given the Poteau bank credit in its account for this check. On the same date, and shortly after the credit had been made, it received notice of the insolvency of the Poteau bank, at a time prior to parting with possession of said check. At that time this and other similar checks had increased the Poteau bank's credit balance to $1,700. It had the legal right, at that time, to charge same back to said account and to return said check to the examiner in charge of the Poteau bank. At that time it had notice of the probable infirmity of the title of the Poteau bank to said paper. It also had the right to forward said check to its correspondent in Oklahoma City to be presented by it to the bank on which it was drawn for collection.

But, when it was returned to it, protested for nonpayment, it still had the right to charge the amount thereof back to the account of the Poteau bank, and if, in the meantime, it paid out any checks and charged same to the Poteau bank's account, after knowledge of its insolvency, it did so at its own peril. The above instruction was therefore erroneous, because it allowed appellee to recover by merely crediting the Poteau bank's account with the amount of the check, without taking into consideration whether it had actually parted with value.

Appellee's instruction No. 4 is erroneous for the same reasons that apply to instruction No. 2 just disposed of. We do not set this instruction out, as it embodies the same error as instruction No. 2.

Appellee's instruction No. 5 was also erroneous in telling the jury that, if they found from the evidence that appellee credited the amount of the check on indebtedness to it by the Poteau bank and was authorized to do so, they should find for the plaintiff, unless it knew of the insolvency of the Poteau bank at the time. This instruction is abstract, as there was no evidence to support it.

Appellee's instruction No. 6 is also assigned as error. It is as follows:

"You are instructed that, as a matter of law, it is presumed that any person who is the holder of a negotiable instrument indorsed to him, acquired such instrument for value; and in this case the burden of proof is upon the defendant, Kansas City Southern Railway Company, to prove by a preponderance of the evidence that the plaintiff did not pay value for the check involved in this suit; and in this connection you are instructed that value, as used in this instruction, may include a credit on an existing indebtedness, or credit on a mutual account, or an advancement of extension of new credit, or a general credit to indorser's checking account."

This instruction placed the burden of proof on appellant to show that appellee did not pay value for the check. This was error, being contrary to § 7825, C. & M. Digest, which is § 59 of the Negotiable Instrument Law.   This section is as follows:

"Every holder is deemed *prima facie* to be a holder in due course; but, when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course. But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

It is not disputed that, at the time the Poteau bank acquired this check from appellant, it was hopelessly insolvent, and therefore perpetrated a fraud on appellant in accepting the check, knowing at the time that it was insolvent. Therefore, by negotiating the instrument to appellee, its title was defective, which placed the burden on appellee to prove that it acquired the title as holder in due course.

Section 52 of the Negotiable Instrument Law, § 7818, C. & M. Digest, is as follows:

"A holder in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Subdivision 3 of this section requires that, in order to be a holder in due course, a person must show "that he took it in good faith and for value."   In *Huff* v. *Iowa City State Bank,* 134 Ark. 495, 204 S. W. 306, quoting from the syllabus, it is said:

"In an action on a note by a *bona fide* purchaser thereof for value, it appeared that the note was procured by fraud; *held,* it thereafter became the duty of the *bona fide* holder to establish by proof the sum paid for the note before he could recover, which sum would be the measure of his recovery."

The last limitation in the above quotation was because of the statute of Iowa to this effect, which was - the law of that case. In that case the court quoted from *Tabor* v. *Merchants' National Bank,* 48 Ark. 458, 3 S. W. 805, 3 Am. St. Rep. 241, as follows:

"The production of the note and proof that the indorsement was made before maturity raised the presumption that the plaintiff had paid value for the note, that it was an innocent holder, and had acquired it in due course of business; but, if the proof subsequently offered by the defendant to establish their defense shows that the note, in its inception, was so infected by fraud as to destroy the title of the original holder, the presumption of the payment of value was thereby overcome, and the burden of proof was shifted to the plaintiff to show that value was given for the note."

For the errors indicated the judgment will be reversed, and the cause remanded for a new trial. It is so ordered.