STANDARD GROCER COMPANY *v.* FIRST SECURITY
BANK OF IDAHO.

4-4657

Opinion delivered May 17, 1937.

52

*Ingram & Moher,* for appellant.

*Young, Elms & Macom,* for appellee.

BUTLER, J.   In August, 1936, the Standard Grocery Company of Stuttgart purchased a car load of potatoes from the Idaho Packing Corporation for the sum of $765.90.   A draft was drawn by the Packing Corporation on the Standard Grocer Company, payable to the First Security Bank of Idaho, which draft, with bill of lading attached, was transmitted to the Peoples National Bank of Stuttgart for collection.   The consignee, Standard Grocer Company, paid the draft to the collecting bank and immediately filed suit against the Packing Corporation for damages alleged to have been sustained by it on a previous shipment of potatoes, and a garnishment was issued and served on the local bank.   This bank notified the bank in Idaho that it had collected the draft, but that the proceeds had been garnished in its hands.   The Idaho bank notified the Packing Corporation of this, which, on the 9th day of September, 1936, gave its check to the Idaho bank in an amount equal to the draft for which it had previously received credit on its checking account. Thereafter, on the 20th day of October, 1936, the Idaho bank filed its intervention claiming to be the owner of the proceeds of the draft.   The Packing Corporation did not answer, and the case was tried on the complaint, answer of the garnishee and the intervention of the Idaho bank.   A jury was waived and the trial court, after having heard the evidence, found in favor of the intervener from which judgment the plaintiff has appealed.

The appellant contends that the recitals on the back of the draft and on the deposit slip given by the Idaho bank to the Packing Corporation established the relation of principal and agent between the two with respect to the draft.   The appellee, on the other hand, contends that the relation existing by reason of the deposit was that of debtor and creditor, and the bank, therefore, must be regarded in law as the purchaser of the draft and entitled to its proceeds.

Aside from the recitals on the back of the draft and the certificate of deposit given to its maker, the evidence

is to the effect that the Packing Corporation and the Idaho bank had been banker and customer through a considerable period of time during which the bank had handled transactions for the corporation similar to the one here involved, and, in all cases as in the instant one, had, upon deposit of the draft, entered the sum for which same was drawn to the credit of the depositor's checking account which was immediately subject to the depositor's check as if the deposit had been in cash. The draft in question was deposited with other items on the 11th day of August, 1936, the total amount of the deposit slip being $3,899.25. All of this was subject to be drawn on by the Packing Corporation's checks, but the evidence fails to show how much of this if any sum was withdrawn prior to the intervention of the Idaho bank in the instant suit.

Appellee relies on *Cox Wholesale Grocery Company v. National Bank of Pittsburg, Kansas,* 107 Ark. 601, 156 S. W. 187, which states the rule announced in *Burton v. U. S.,* 196 U. S. 283, 25 S. Ct. 243, 49 L. Ed. 482, where it is said: "When a check is taken to a bank and the bank receives it and places the amount to the credit of the customer the relation of creditor and debtor between them subsists, and not that of principal and agent." In the decision quoted from, the court cited and quoted from *Taft v. Bank,* 172 Mass. 363, 52 N. E. 387: "So when, without more, a bank receives upon deposit a check indorsed without restriction, and gives credit for it to the depositor as cash in a drawing account, the form of the transaction is consistent with and indicates a sale, in which, as with money so deposited, the check becomes the absolute property of the banker."

Our cases, *Brown v. Yukon National Bank,* 138 Ark. 210, 209 S. W. 734; *Farmers State Bank v. First State Bank,* 142 Ark. 331, 218 S. W. 847; *Merchants Bank, etc., v. Searcy Wholesale Grocery Company,* 166 Ark. 153, 265 S. W. 961, and *Guaranty Bank & Trust Co. v. Davis,* 170 Ark. 86, 279 S. W. 357, are cited as supporting the above doctrine, and, also, excerpts from the texts of R. C. L. and C. J., which have been quoted with approval in some of our decisions.

It is the position of appellee that the cases of *Merchants Bank* v. *Searcy Wholesale Grocery Company; Guaranty Bank & Trust Co.* v. *Davis,* and *Farmers State Bank* v. *First State Bank, supra,* are based on facts almost identical with those of the case at bar and decisively sustain the conclusion of the trial court. On the contrary, it is the view of the appellant that the facts of those cases are distinguishable from those of the instant case which brings it within the principle that to pass title to a bank accepting a draft or check for deposit, something more is needed than the immediate credit passed to the account of the deposit, and that is that, in addition to this, the receiving bank must have parted with value to the amount of the credit. "In addition to this (the immediate credit) it must have parted with value to the amount of the credit, else it could not be hurt, had lost nothing, and would be in no position to maintain an action against appellant for the amount of the check. It is true, as was said in *Cox Wholesale Grocery Co.* v. *The National Bank of Pittsburg,* 107 Ark. 601, 156 S. W. 187, that 'when a check is taken to a bank and the bank receives it and places the amount to the credit of the customer, the relation of creditor and debtor between them subsists, and not that of principal and agent,' but it is, also, true that, if the check which has been credited in the depositor's account is unpaid, the bank has the legal right to charge the amount of it back to the depositor's account, where a sufficient credit still remains to cover it. By merely entering credit in the depositor's account the bank has parted with nothing of value. Of course, if the depositor checks out the amount of his credit in the bank, then the bank has parted with value and becomes a holder in due course for value of the instrument." *Kansas City Southern Ry. Co.* v. *First National Bank of Ft. Smith,* 174 Ark. 447, 295 S. W. 357, 60 A. L. R. 241.

It is the established rule that, regardless of any specific guaranty by the depositor that the check or draft will be paid on presentation, there is an implied warranty to that effect and that the bank, although the relation of debtor and creditor may exist, has the right to charge

back to the depositor the amount of the check if not paid on presentation. That appears to be the recognized custom, and in this particular case the stipulation in the certificate of deposit issued to the Packing Corporation reserved that right. It does not appear, however, that the balance to the credit of the depositor was exhausted, or would have been exhausted, by a charge back when the proceeds of the check in question were garnished. What that balance was is not shown by the evidence except that at the time the draft for $765.50 was deposited, other items were deposited making the total deposit the sum of $3,899.25. This situation is quite different to that which obtained in *Scott* v. *W. H. McIntyre Company*, 93 Kans. 508, 144 Pac. 1002, L. R. A. 1915D, 139, cited by appellee, in which a bank had intervened claiming title to the proceeds of a draft deposited with it. That case noted the conflict in the decision relating to the question there considered which is involved in the instant case, and the general rule quoted *supra*, and quotes as follows from 3 R. C. L. 524: "Still, according to the weight of authority, the rule above stated is not an absolute rule, and is *prima facie* merely, and yields to the intention of the parties, expressed or implied from the circumstances." The court observed that some of the conflict in the decisions bearing upon the general aspect of the question could be accounted for by the difference in the facts and the manner in which the issues of ownership had been raised. Referring to the facts in the case before it, the court further said: "Here we regard the result as controlled by the circumstances that the depositor not only received credit for the amount of the draft, but actually drew upon it, and used the full amount. When the item was deposited, the account of the McIntyre Company was overdrawn. The credit operated at once to offset the depositor's debt to the bank. Before the garnishment summons issued, the account was again overdrawn, and the credit thereby exhausted. In this situation the McIntyre Company could not successfully have asserted a claim to the draft or its proceeds against the Auburn bank, and the attaching creditor could gain no higher rights than were possessed by the defendant."

Appellee, in commenting on the point raised by appellant relating to the effect of the payment by the Idaho Packing Corporation on September 9, 1936, of the amount of the draft, contends that the case of *Merchants Bank of Kansas City* v. *Searcy Wholesale Grocery Co., supra,* settles the question against appellant's contention, and that that case is supported by the decisions in *King* v. *Bowling Green Trust Co.,* 145 App. Div. 398, 129 N. Y. S. 977; *Chrisman* v. *Lumberman's Nat. Bank,* (Texas) 163 S. W. 651; *Scott* v. *McIntyre Co.,* 93 Kans. 508, 144 Pac. 1002, L. R. A. 1915D, 139, and *Lummus Cotton Gin Co.* v. *Walker,* 195 Ala. 552, 70 So. 754. We have examined these cases and do not find that they support the case of *Merchants Bank* v. *Searcy Wholesale Grocery Co., supra,* except in their recognition of the general rule. We have quoted from the Kansas case, *supra,* which recognizes the exceptions which might arise to the general rule according to the circumstances of the particular case considered.

The case of *Farmers State Bank* v. *First State Bank, supra,* was a controversy between the bank in which certain drafts were deposited and the correspondent bank to which they were sent for collection. The decision turned upon the sufficiency of the evidence to sustain the defense tendered. The court there said: "This defense, in effect, was that appellee had the drafts for collection only, and that appellant was prevented from remitting the full amount of the drafts by the pendency of the garnishment proceeding. It is apparent that this is a question of fact, and, had a jury so found, we probably would not say that the testimony was not legally sufficient to support the verdict. However, we have the finding of the chancellor against the contention made, and we cannot say this finding is clearly against the preponderance of the testimony." In that case the maker of the draft had deposited the same with the First State Bank and received credit therefor and the draft was transmitted for collection to the Farmers State Bank which collected the same. Afterward, and before remittance could be made to the sending bank, the proceeds

were attached in a suit against the maker and the First State Bank intervened claiming to be the owner of the draft and entitled to its proceeds. After having decided that the finding of the chancellor to .the effect that the claim of the First State Bank should be sustained, the court noticed the contention of the Farmers State Bank that the right to maintain the action was defeated by the showing made "that before the trial of this cause Septer (the drawer of the draft) had repaid the appellee bank the amount of the drafts for which he was given credit at the time the transaction occurred," and, in denying this contention, said: "there is nothing to indicate an intention to release appellant from liability than being insisted upon." (Septer, the maker, did not intervene and, while made a party by the warning order, does not appear to have made any defense to the action.)

We perceive an important distinction in the case referred to last above and the instant case. In the former, there is nothing to indicate that the repayment of the drafts was made prior to the intervention. In the latter, before the appellee by its intervention became a party to the suit, which occurred on October 20, 1936, the Packing Corporation had repaid the amount of the draft for which it had been credited and thus satisfied its contingent liability, thus restoring to it the ownership of the draft (if it be conceded that previously title had passed to the Idaho bank) and, therefore, was entitled to possession of the draft. It necessarily follows that, at the time of the intervention of the appellee bank, it had neither title nor right of possession to the proceeds of the draft for which it had intervened. From the final transaction between the Packing Corporation and the bank it affirmatively appears that the bank had lost nothing, was not in any wise hurt, and would be in no position to maintain an action for the proceeds of the draft. *Kansas City So. Ry. Co.* v. *First National Bank, supra.* In that case, the court quoted from *Little* v. *Arkansas National Bank,* 113 Ark. 72, 167 S. W. 75, as follows: "Appellants insist that a verdict should have been directed in their favor, and, in support of this position, they cite cases holding that,

when a bank simply discounts a note and credits the amount thereof to the indorser's account without paying to him any value for it, the transaction does not constitute the bank a purchaser for value of the note." In commenting upon this statement, the court said: "While this statement may be *obiter* as to that case, it appears to us that it is a correct statement of the law," and a number of decisions are cited in support of this conclusion.

From the views expressed, it follows that the judgment of the trial court should be, and is hereby reversed, and the cause remanded for further proceedings in accordance with this opinion.